UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 09:11-cv-80880-KLR

QSGI, INC., a Delaware Corporation,

                    Plaintiff,

     v.

IBM GLOBAL FINANCING, a Division of
International Business Machines Corporation,
INTERNATIONAL BUSINESS MACHINES
CORPORATION, Parent to and/or d/b/a IBM
GLOBAL FINANCING,

                    Defendants.

**DEFENDANTS IBM AND IBM GLOBAL FINANCING'S MOTION TO
DISMISS THE COMPLAINT AND SUPPORTING MEMORANDUM**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT AND BACKGROUND................................................1

STANDARD ON MOTION TO DISMISS ...........................................................4

ARGUMENT .................................................................................................5

I.    QSGI HAS NOT PLED ANTITRUST INJURY AND THUS LACKS
      ANTITRUST STANDING. ..................................................................5

      A.    Applicable Legal Principles. ........................................................5

      B.    QSGI Makes No Cognizable Allegation of Antitrust Injury. .....................6

            1.    QSGI Pleads No Facts To Support Antitrust Injury. .......................7

            2.    QSGI's Conclusory Allegations of Injury to Competition
                  Are Unavailing. ................................................................9

            3.    QSGI Cannot Satisfy the Requirement of Antitrust Injury
                  by Alleging Injury Only to Itself. ...................................10

II.   QSGI FAILS TO STATE A FDUTPA CLAIM. ....................................11

      A.    QSGI Fails To Allege a Violation of FDUTPA Based on Its
            Antitrust Claim. ..........................................................11

      B.    QSGI Has Not Pled Actual Damages Under FDUTPA. ...........................12

CONCLUSION.............................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
    135 F.3d 740 (11th Cir. 1998) ......................................................................................5

*Appleton v. Intergraph Corp.*,
    627 F. Supp. 2d 1342 (M.D. Ga. 2008) ......................................................................8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..........................................................................................4, 6, 10

*Austin v. Blue Cross & Blue Shield of Ala.*,
    903 F.2d 1385 (11th Cir. 1990) ....................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................4, 6, 8, 10

*Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*,
    166 F. Supp. 2d 432 (D. Md. 2001) ..............................................................................2

*Cargill, Inc. v. Monfort of Colo., Inc.*
    479 U.S. 104 (1986)......................................................................................................5

*CBC Cos. v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) ......................................................................................10

*Eclipse Med., Inc. v. Am. Hydro-Surg. Instruments, Inc.*,
    262 F. Supp. 2d. 1334 (S.D. Fla. 1999) (Ryskamp, J.)...........................................12, 13

*George Haug Co. v. Rolls Royce Motor Cars Inc.*,
    148 F.3d 136 (2d Cir. 1998)..........................................................................................9

*Glades Pharms., LLC v. Murphy*,
    No. 1:06-CV-0940, 2006 WL 3694625 (N.D. Ga. Dec. 12, 2006)......................6, 9, 10

*Hap v. Toll Jupiter Ltd. P'ship*,
    No. 07-81027-CIV, 2009 WL 187938 (S.D. Fla. Jan. 28, 2009) (Ryskamp, J.) ... 11-12

*Hunter v. Bev Smith Ford, LLC*,
    No. 07-80665-CIV, 2008 U.S. Dist. LEXIS 34982 (S.D. Fla. Apr. 29, 2008)
    (Ryskamp, J.) ...............................................................................................................12

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ..............................................................................6, 10

*JES Props., Inc. v. USA Equestrian, Inc.*,
   No. 8:02-CV-1585T24, 2005 WL 1126665 (M.D. Fla. May 9, 2005) ..................11, 12

*Jovine v. Abbott Labs., Inc.*,
   No. 11-CV-80111, 2011 U.S. Dist. LEXIS 39702 (S.D. Fla. Apr. 12, 2011) .............13

*Kermanj v. Goldstein*,
   No. 09-12135, 2010 WL 4230656 (11th Cir. Oct. 27, 2010) ........................................4

*Kertesz v. Net Transactions, Ltd.*,
   635 F. Supp. 2d 1339 (S.D. Fla. 2009) ......................................................................13

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
   72 F.3d 1538 (11th Cir. 1996) .....................................................................................6

*Maxxim Med., Inc. v. Prof'l Hosp. Supply, Inc. (In re Maxxim Med. Grp.)*,
   434 B.R. 660 (Bankr. M.D. Fla. 2010) .......................................................................13

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ..........................................................................5, 6, 8, 11

*Okeelanta Power Ltd. P'Ship v. Fla. Power & Light Co.*,
   766 So. 2d 264 (Fla. Dist. Ct. App. 2000) ...................................................................5

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
   619 F. Supp. 2d 1260 (S.D. Fla. 2009) ..................................................................6, 10

*Siever v. BWGaskets, Inc.*,
   669 F. Supp. 2d 1286 (M.D. Fla. 2009)......................................................................11

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comms., Inc.*,
   376 F.3d 1065 (11th Cir. 2004) ......................................................................... passim

*Todorov v. DCH Healthcare Auth.*,
   921 F.2d 1438 (11th Cir. 1991) .............................................................................5, 6, 7

*United States ex rel. Carroll v. JFK Med. Ctr.*,
   No. 01-8158-CIV, 2002 WL 31941007 (S.D. Fla. Nov. 15, 2002)
   (Ryskamp, J.) ...........................................................................................................4, 7

*Vitacost.com, Inc. v. Gaia Herbs, Inc.*,
   No. 06-81141-CIV, 2007 WL 286262 (S.D. Fla. Jan. 29, 2007)...................................5

*Vitacost.com, Inc. v. Gaia Herbs, Inc.*,
   No. 06-81141-CIV, 2007 WL 951768 (S.D. Fla. Mar. 28, 2007) ...............................10

*Warfield Philadelphia LP v. National Passenger R.R. Corp.*,
   No. 09-1002, 2009 WL 4043112 (E.D. Pa. Nov. 20, 2009) ........................................10

**Statutes & Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 4

Fla. Stat. § 501.211 ...............................................................................................................12

Fla. Stat. § 542.19 .................................................................................................................5

**Other Authorities**

Black's Law Dictionary 1056 (9th ed. 2009).......................................................................8

International Business Machines Corp.,
    2010 Annual Report (Form 10-K) ...................................................................................2

International Business Machines Corp.,
    Exhibit 21 to 2010 Annual Report (Form 10-K) ...........................................................2

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants International Business Machines Corporation ("IBM") and IBM Global Financing ("IGF") move to dismiss the Second Amended Complaint (the "Complaint") filed by plaintiff QSGI, Inc. ("QSGI").

## PRELIMINARY STATEMENT AND BACKGROUND

This motion turns on two things: (1) the nature of QSGI's chosen business strategy of selling used IBM mainframe computers; and (2) the alleged effect of IBM's "six-month rule" on that business strategy. QSGI alleges that IBM's rule adversely impacted QSGI's business. QSGI does not cognizably allege any broader impact in the marketplace, any effect on other sellers of used IBM mainframe computers or any detriment to purchasers of such machines. Yet QSGI founds its Complaint on the claim that IBM violated the antitrust laws with respect to the alleged market for used IBM mainframe computers. Antitrust claims, by definition, depend on harm to competition in a relevant market, not merely harm to an individual firm. QSGI, however, pleads only harm to itself and thus has failed to satisfy the most fundamental requirement of its antitrust claim. Its Complaint must therefore be dismissed.

QSGI alleges that it built a business based on its particular practice of "purchas[ing] used IBM mainframe computers on the open market", changing their processing capacity, or reconfiguring them, and reselling them to end-user customers.[1] (Compl. ¶¶ 11, 13.) Specifically, QSGI claims that its ability to downgrade the

---

[1] IBM manufactures and sells IBM mainframe computers worldwide. (Compl. ¶ 4.) QSGI alleges that "IBM's sales of new mainframe computers presently account for approximately 35% of the new mainframe computer market" (*id.* ¶ 7), and that new mainframes compete against used mainframes (*id.* ¶ 11), but alleges as its relevant product market a purported market for *used* IBM mainframes (*id.* ¶¶ 13, 18, 20, 22, 26, 28, 29, 32). Although QSGI's purported used IBM mainframe market is utterly unsupportable, we leave that to the side for purposes of this motion because QSGI's Complaint must be dismissed anyway on the basis that QSGI does not have antitrust standing.

processing capacity of used IBM mainframes was critical to its success and that it needed IBM microcode and parts to do so.  (*Id.* ¶ 13.)  The Complaint does not identify any other third party that engaged in this particular business practice.

According to the Complaint, in or around 2007 IBM adopted a policy that it would only sell the parts and microcode needed to reconfigure a used IBM mainframe computer if it had been installed and in use by the customer for at least six months (the "six-month rule").  (*Id.* ¶¶ 13, 16.)  Moreover, QSGI alleges that, while IBM enforced the six-month rule against QSGI, it did not enforce the rule against IGF,[2] permitting IGF to change the capacity of used IBM mainframes prior to shipping.[3]  (*Id.* ¶¶ 16, 18.)  Because QSGI's business model allegedly centered on selling changed-capacity mainframes, QSGI asserts that IBM's policy disadvantaged it relative to IGF, forcing QSGI out of business.  (*Id.* ¶¶ 13, 16-18.)

QSGI frames its Complaint as one of monopolization, alleging that IBM used its "monopoly power to quash QSGI's ability to compete and exist in the marketplace for used IBM mainframe computers".  (*Id.* ¶ 18.)  For its causes of action,

---

[2] IGF is not a legal entity, but rather an IBM business unit that in the United States is a business segment of IBM Credit LLC ("IBM Credit"), a wholly owned subsidiary of IBM.  *See* International Business Machines Corp., Annual Report (Form 10-K) (Feb. 22, 2011), *available at* http://www.sec.gov/Archives/edgar/data/51143/000104746911001117/a2201254z10-k.htm ("The company's major operations consists of five business segments: [including] . . . Global Financing."); International Business Machines Corp., Exhibit 21 to Annual Report (Form 10-K) (Feb. 22, 2011), *available at* http://www.sec.gov/Archives/edgar/data/51143/000104746911001117/a2201254zex-21.htm (listing IBM Credit as wholly owned subsidiary).  QSGI served IBM and purported to serve IGF, despite the fact that IGF is not a legal entity.  Because IGF is not a legal entity, it cannot be sued and QSGI's claims against IGF should be dismissed.  *See, e.g.*, *Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 439-40 (D. Md. 2001) (dismissing claim against an unincorporated division because, "[a]s an unincorporated division, [defendants] lack the capacity to be sued").  QSGI cannot now join IBM Credit because the applicable statutes of limitations have run against IBM Credit.

[3] Based on QSGI's allegations, its theory of liability rests on two assumptions:  (1) that IBM newly adopted the six-month rule in 2007; and (2) that IBM applies this rule inconsistently as to IGF on the one hand and QSGI on the other.  Notably, QSGI has failed to include any specific factual allegations supporting either of these assumptions.

QSGI first asserts a violation of the Florida Antitrust Act and, second, repackages the same claim as a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  (*See id.* ¶ 1.)

Both of QSGI's claims should be dismissed.  As to the antitrust claim, QSGI has failed to allege the essential element of antitrust injury.  The antitrust laws exist to protect against injuries to competition itself (*i.e.*, the elimination of competition to the detriment of consumers), not merely injuries to individual competitors (which is all QSGI alleges).  Thus, no purported antitrust claim can stand absent pleading, and ultimately proof, of an antitrust injury.  Here, QSGI has failed to allege any injury to competition.  It asserts no facts to demonstrate any reduction of competition in the purported market for used IBM mainframe computers.  The only change alleged to have resulted from IBM's conduct is that QSGI was unable to continue its particular business practice of buying IBM mainframe computers and then reconfiguring them prior to reselling them.  But that is, at best, an injury to QSGI, not an injury to competition in the alleged market for used IBM mainframe computers.

QSGI bases its FDUTPA claim entirely on its antitrust claim.  QSGI makes no attempt to allege that IBM's six-month rule was in any way deceptive, thereby eliminating that possible justification for the claim.  Nor does QSGI make any allegation of unfairness—except insofar as it alleges that IBM used "monopoly power".  (*Id.* ¶ 25.) The FDUTPA claim therefore turns entirely on the antitrust claim, and rises or falls with it.  Because the antitrust claim fails, the FDUTPA claim fails as well.  Moreover, QSGI's failure to plead actual damages—a necessary component of an FDUTPA damages claim—provides an independent basis to dismiss QSGI's FDUTPA claim for damages.

## STANDARD ON MOTION TO DISMISS

In order to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the allegations must "plausibly suggest an entitlement to relief". *Iqbal*, 129 S. Ct. at 1951. Mere recitation of the elements of a claim accompanied by conclusory allegations is insufficient, and conclusory allegations may be disregarded.  *Id.* at 1949, 1951 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  [Where] the allegations are conclusory [they are] not entitled to be assumed true."); *see also United States ex rel. Carroll v. JFK Med. Ctr.*, No. 01-8158-CIV, 2002 WL 31941007, at *2 (S.D. Fla. Nov. 15, 2002) (Ryskamp, J.) ("This Court need not accept facts that are internally inconsistent, facts that run counter to facts which the court may take judicial notice of, conclusory allegations, unwarranted deductions, or mere legal conclusions.").  Furthermore, inclusion of *some* factual allegations is not enough; instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.[4]

---

[4] The foregoing standard applies to a Rule 12(b)(6) motion to dismiss state-law claims over which a federal court has diversity jurisdiction.  *See, e.g.*, *Kermanj v. Goldstein*, No. 09-12135, 2010 WL 4230656, at *1 (11th Cir. Oct. 27, 2010) (applying the *Iqbal* standard to state-law contract dispute over which court had diversity jurisdiction).

## ARGUMENT

**I.      QSGI HAS NOT PLED ANTITRUST INJURY AND THUS LACKS ANTITRUST STANDING.**

QSGI has failed to plead any harm to competition.  Its Complaint thus fails to satisfy the absolute requirement of pleading antitrust injury.  QSGI's antitrust claim should therefore be dismissed.

### A.      Applicable Legal Principles.

Pleading harm to an individual competitor is not sufficient for antitrust standing.  Rather, antitrust standing requires a specific showing of *antitrust injury*—namely, that there is a public harm from the alleged conduct that coincides with a plaintiff's private harm.[5]  *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir. 1991).  As the Eleventh Circuit has stated, "antitrust injury [i]s the touchstone for antitrust standing".  *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1389 (11th Cir. 1990); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (antitrust injury is a "necessary . . . condition of antitrust standing" (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986))).  As such, where a plaintiff's antitrust claim merely alleges harm to an individual competitor, dismissal is warranted.  *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comms., Inc.*, 376 F.3d 1065, 1069, 1072-73, 1079 (11th Cir. 2004) ("Critically, under both sections [One and Two of the Sherman Act], an antitrust plaintiff must show harm to competition in general, rather

---

[5] Federal antitrust standing law applies to Florida Antitrust Act claims.  *See Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 WL 286262, at *1-*2 (S.D. Fla. Jan. 29, 2007) (concluding that federal antitrust standing law applies to questions of standing under the Florida Antitrust Act); *Okeelanta Power Ltd. P'Ship v. Fla. Power & Light Co.*, 766 So. 2d 264, 268 (Fla. Dist. Ct. App. 2000) (applying federal law to a claim brought under § 542.19 of the Florida Antitrust Act and dismissing the claim for failure to show antitrust injury); *see also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n.11 (11th Cir. 1998) ("Federal and Florida antitrust laws are analyzed under the same rules and case law.").

than merely damage to an individual competitor."); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1276 (S.D. Fla. 2009) (finding no standing to bring Sherman Act or Florida Antitrust Act claims where "[t]he Amended Complaint alleges many detriments to Plaintiff, but it does not allege 'antitrust injury'"); *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339-40 (11th Cir. 2010) ("plaintiff claiming [harm to competition] should point to the specific damage done to consumers in the market" (internal quotation marks omitted)).

Furthermore, absent factual allegations of antitrust injury—rather than merely conclusory ones—an antitrust claim will fail under *Twombly* and *Iqbal*. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. Without such allegations, there can be no plausible claim to relief on an antitrust claim that could withstand dismissal. *See, e.g.*, *NicSand*, 507 F.3d at 451 ("a 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury" (quoting *Twombly*, 550 U.S. at 557)).[6]

## B.    QSGI Makes No Cognizable Allegation of Antitrust Injury.

QSGI's sparse Complaint neither pleads facts that plausibly suggest harm to competition (*see, e.g.*, *Spanish Broad.*, 376 F.3d at 1069, 1072-73, 1079) nor meets the

---

[6] The Eleventh Circuit and the district courts within it variously address competitive harm as a matter of antitrust standing or alternatively as an element of the substantive antitrust claim. *Compare Todorov*, 921 F.2d at 1449 (antitrust injury, defined as the anticompetitive effect of a violation, is required for standing), *and Pierson*, 619 F. Supp. 2d at 1275-77 (same), *with Jacobs*, 626 F.3d at 1339-40 (competitive harm is an element of an antitrust claim and failure to allege anticompetitive effects warrants dismissal), *and Glades Pharms., LLC v. Murphy*, No. 1:06-CV-0940, 2006 WL 3694625, at *3 (N.D. Ga. Dec. 12, 2006) (same); *see also Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996) (noting the disparate treatment and stating that the absence of a threat to competition means there was no antitrust violation, so considering antitrust standing would be unnecessary). In any event, the analysis is identical because, as to either, the *sine qua non* to survive dismissal is a sufficient allegation of harm to competition.

*Twombly* and *Iqbal* pleading standard. QSGI's antitrust claim should therefore be dismissed.

### 1.    QSGI Pleads No Facts To Support Antitrust Injury.

Properly pleading antitrust injury requires allegations, rooted in fact, of the anticompetitive effects of the conduct alleged to violate the antitrust laws. *Todorov*, 921 F.2d at 1450 ("[Plaintiffs] must plead and prove that the injury they have suffered derives from some anticompetitive conduct and is the type the antitrust laws were intended to prevent."). QSGI offers none. It makes no allegations as to the structure of the alleged market for used IBM mainframe computers. For example, while QSGI alleges that IBM has a 35% market share of a purported "new mainframe computer market" (Compl. ¶ 7),[7] QSGI fails to allege IBM's market share in the purported used IBM mainframe computer market. QSGI also fails to allege what its own market share was before and after IBM's purported adoption of the six-month rule in 2007; how many competitors are in the purported used IBM mainframe market; the strength of any other competitor in the purported market; how other competitors were impacted, if at all; or why QSGI's exit from that market would result in uncompetitive prices to customers.[8] QSGI has not identified a single competitor (other than itself) that supposedly has been harmed by IBM's six-month rule; nor has QSGI identified a single customer adversely affected by

---

[7] This allegation cuts against any claim of market power.

[8] Indeed, to the extent that QSGI describes the competitive landscape of its alleged market at all, it affirmatively alleges the existence of other competitors, none of whom QSGI identifies, let alone describes in its Complaint. For example, QSGI's Complaint refers to "others involved in the used IBM mainframe market" (Compl. ¶ 20) and to competitors in the sale of used IBM mainframes whose market share QSGI "eventually" surpassed (*id.* ¶ 15). And, as described *infra*, QSGI alleges that it obtained its used mainframes not from IBM, but on the "open market". (*Id.* ¶ 11.) Yet QSGI alleges without elaboration that its exit from the alleged market "forc[ed] all potential customers to deal with IGF at uncompetitive prices". (*Id.* ¶ 17.) To the extent QSGI intends to suggest that IBM is the sole source of used IBM mainframes, this contradicted allegation may properly be disregarded. *See United States ex rel. Carroll*, 2002 WL 31941007, at *2 ("internally inconsistent" allegations may be disregarded).

the rule.  QSGI has not explained in any way how competition in the alleged market has

been reduced by IBM's rule, or how customers could have been adversely affected.  On

the contrary, QSGI alleges that its business model involved purchasing used IBM

mainframe computers on the "open"—*i.e.*, freely competitive[9]—market.  (Compl. ¶ 11.)

QSGI gives no reason to think that this "open market" does not still exist.[10]

       The Eleventh Circuit's decision in *Spanish Broadcasting* is directly on

point and dispositive here.  In that case, Spanish Broadcasting System ("SBS") brought

antitrust claims under the Sherman Act against Clear Channel Broadcasting ("CC") and

Hispanic Broadcasting Channel ("HBC") alleging that CC and HBC had conspired to

harm SBS, induced its employees to breach their employment contracts, hindered its

ability to raise capital, and discouraged advertisers from purchasing ad time on SBS.  376

F.3d at 1069-70.  SBS's allegations of harm included "weakened stock prices, restricted

access to capital markets, loss of employees, damaged reputation, and loss of advertising

revenue".  *Id.* at 1072.  The district court dismissed SBS's complaint, and the Eleventh

Circuit affirmed, holding that SBS's complaint failed to allege harm to competition.  *Id.*

at 1072-74, 1076-77.  The Court of Appeals noted that the complaint contained "no

allegations at all about a factual connection between the conduct alleged and overall

impact on the advertising market".  *Id*. at 1072.  The court rejected SBS's argument that

---

[9] *See, e.g.*, Black's Law Dictionary 1056 (9th ed. 2009) (defining "open market" as "[a] market in which any buyer or seller may trade and in which prices and product availability are determined by free competition.—Also termed *free market*.").

[10] The fact that the alleged market for used IBM mainframes was and apparently remains an "open market" substantially undermines QSGI's antitrust theory.  This in itself warrants dismissal of the antitrust claim here.  *See Appleton v. Intergraph Corp.*, 627 F. Supp. 2d 1342, 1356 (M.D. Ga. 2008) (dismissing plaintiff's Sherman Act Section One claim where the plaintiff's complaint, which alleged the existence of "alternative solutions", showed that "competition continues to exist"); *NicSand*, 507 F.3d at 458 ("When 'the complaint itself gives reasons' to doubt plaintiff's theory . . . it is not our task to resuscitate the claim but to put it to rest." (quoting *Twombly*, 550 U.S. at 568)).

as the primary competitor in its alleged market, any damage to SBS inherently damaged competition, explaining that SBS had failed to meet its burden of supporting this inference with "specific factual allegations" such as "specific damage done to consumers in the relevant market". *Id.* at 1072-73.

Here, as in *Spanish Broadcasting*, QSGI has not offered any specific allegations from which an inference could plausibly be drawn that its alleged injury necessarily resulted in harm to competition. Quite the opposite: all the allegations here concern the unique impact of IBM's six-month rule on QSGI's chosen business strategy. QSGI has failed to plead any information about the competitive landscape in the alleged market for used IBM mainframe computers and therefore has failed to discharge its obligation to plead harm to competition in that market. Accordingly, QSGI's antitrust claim should be dismissed. *See George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 140 (2d Cir. 1998) (affirming dismissal for lack of antitrust standing where "Plaintiff has failed to plead its own market share" or the "market share purportedly absorbed by" the defendant's alleged co-conspirator); *Glades Pharms., LLC v. Murphy*, No. 1:06-CV-0940, 2006 WL 3694625, at *3 (N.D. Ga. Dec. 12, 2006) (dismissing complaint, noting that "[t]he complaint makes no mention of how many competitors are in the [relevant] market or why [defendant's] entrance into the market would 'reduce prices'").

## 2.   QSGI's Conclusory Allegations of Injury to Competition Are Unavailing.

QSGI's Complaint offers a few wholly conclusory allegations to the effect that IBM used its purported market power to "injure[] competition", "restrict competition" and "render[] it impossible for competition to exist". (Compl. ¶¶ 22, 23.)

But numerous courts have concluded that such naked assertions of harm to competition cannot withstand dismissal under the *Twombly* and *Iqbal* pleading standard.  *See Jacobs*, 26 F.3d at 1339 (conclusory allegation of higher prices to customers insufficient plausibly to suggest actual harm to competition); *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 571-72 (6th Cir. 2009) (allegations of "restricting competition", "decreasing options" and "increasing . . . costs" insufficient to establish antitrust standing).[11]  Such "threadbare recitals" as provided by QSGI are precisely the types of conclusory labels and conclusions that *Twombly* and *Iqbal* held may properly be ignored.  *See Twombly*, 550 U.S. at 555-56; *Iqbal*, 128 S. Ct. at 1949, 1951.  QSGI's antitrust claim should be dismissed.

### 3.  QSGI Cannot Satisfy the Requirement of Antitrust Injury by Alleging Injury Only to Itself.

QSGI alleges that it—as an individual firm—suffered injury.  Indeed, the gravamen of the Complaint is QSGI's allegation that it could not carry on its particular business model in the face of IBM's six-month rule.  For example, QSGI alleges that: "Central to *QSGI's* ability to participate and compete in the used IBM mainframe computer market was its ability to change the capacity of the used IBM mainframe computer to meet the needs of its purchasers" (Compl. ¶ 13 (emphasis added)); "*QSGI's* ability to purchase these parts and micro-codes and subsequently modify the capacity of the used mainframe computers was critical to its existence and survival" (*id.* (emphasis

---

[11] *See also Pierson*, 619 F. Supp. 2d at 1276 (allegations of "diminished competition" and effects of "competitive significance" insufficient for antitrust standing); *Glades Pharms.*, 2006 WL 3694625, at *3 (allegations of "harm to competition" and actions designed to preclude "lower prices to consumers" insufficient); *Warfield Philadelphia LP v. National Passenger R.R. Corp.*, No. 09-1002, 2009 WL 4043112, at *5 (E.D. Pa. Nov. 20, 2009) (allegations that defendant restrained competition, reduced or eliminated competition, restrained low-cost services and excluded the plaintiff resulting in increased prices insufficient); *Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 WL 951768, at *3 (S.D. Fla. Mar. 28, 2007) (allegation that defendants' actions were "hurting all consumers" insufficient).

added)); and "IBM's six month rule had the effect of driving *QSGI* from the market" (*id.* ¶ 17 (emphasis added)).

But such allegations cannot save QSGI's antitrust claim.  As a matter of black-letter law, allegations of individual injury are insufficient to plead antitrust injury. *See, e.g.*, *NicSand,* 507 F.3d at 457 (no antitrust injury where "claimant is doing nothing more than invoking the antitrust laws to protect a competitor, not competition"); *JES Props., Inc. v. USA Equestrian, Inc.*, No. 8:02-CV-1585T24, 2005 WL 1126665, at *11 (M.D. Fla. May 9, 2005) ("In essence, Plaintiffs complain of injury largely to themselves not injury that inures to the public detriment.  This is not antitrust injury."), *aff'd on other grounds*, 458 F.3d 1224 (11th Cir. 2006); *see also Spanish Broad.*, 376 F.3d at 1075 ("[C]onduct that injures individual firms rather than competition in the market as a whole does not violate Section Two [of the Sherman Act].").  Because QSGI alleges only injury to itself, and not antitrust injury, QSGI's antitrust claim should be dismissed.

## II.      QSGI FAILS TO STATE A FDUTPA CLAIM.

### A.      QSGI Fails To Allege a Violation of FDUTPA Based on Its Antitrust Claim.

QSGI's FDUTPA claim relies entirely on its antitrust claim.  Because QSGI's antitrust allegations fail to state a claim, QSGI's FDUTPA claim arising from those same allegations must also be dismissed.

A claim under FDUTPA has three elements:  (1) a deceptive or unfair practice; (2) causation; and (3) actual damages.  *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009).  A FDUTPA claim may be alleged as a "*per se* violation premised on the violation of another law proscribing unfair or deceptive practice".  *Hap*

*v. Toll Jupiter Ltd. P'ship*, No. 07-81027-CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 28, 2009) (Ryskamp, J.).

QSGI makes no allegations that IBM's purported adoption in 2007 of the six-month rule is in any way deceptive.  QSGI also fails to allege any facts suggesting that IBM's conduct was at all unfair other than a conclusory assertion that use of "monopoly power" is an "unfair business practice".  (Compl. ¶ 25.)  QSGI's FDUTPA allegations are, thus, merely a repackaging of the allegations offered for its antitrust claims.  When, as here, a plaintiff's FDUTPA claim is based on the same allegations as its antitrust claim, failure to establish a violation of antitrust law is sufficient to conclude that the plaintiff has also failed to state a FDUTPA claim.  *See JES Props*, 2005 WL 1126665, at *19 & n.23; *see also Hunter v. Bev Smith Ford, LLC*, No. 07-80665-CIV, 2008 U.S. Dist. LEXIS 34982, at *20 (S.D. Fla. Apr. 29, 2008) (Ryskamp, J.) (plaintiffs based all FDUTPA allegations on violations of state and federal statutes that the court had already considered and rejected, thus there could be no FDUTPA violation).  Because QSGI's antitrust claim must be dismissed, QSGI's FDUTPA claim also cannot survive.

**B.     QSGI Has Not Pled Actual Damages Under FDUTPA.**

IBM further, and in the alternative, moves to dismiss QSGI's FDUTPA claim to the extent that it purports to seek "actual damages" under section 501.211(2), because QSGI failed to plead "actual damages" as required by Florida law.  Florida courts have held that "actual damages" under section 501.211(2) is "a term of art".  *Eclipse Med., Inc. v. Am. Hydro-Surg. Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) (Ryskamp, J.).  "The measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered

according to the contract of the parties", except that where a product is "rendered valueless" as a result of a defect, "purchase price is the appropriate measure of damages". *Jovine v. Abbott Labs., Inc.*, No. 11-CV-80111, 2011 U.S. Dist. LEXIS 39702, at *28-*29 (S.D. Fla. Apr. 12, 2011); *see also Eclipse Med.*, 262 F. Supp. 2d. at 1357.

QSGI has failed to plead any facts from which one could plausibly infer the degree to which, or even whether, the market value of any product has changed as a result of IBM's purported conduct.  Nor has QSGI pled that any product has been rendered valueless as a result of a defect such that a purchase price (also not alleged) could stand in as the market value for purposes of actual damages.  In fact, in light of QSGI's allegation that it acquired its used mainframes from the open market, rather than from IBM, the notion of "actual damages"—which is predicated on the market value of the product as "delivered according to the contract of the parties", *Eclipse Med.*, 262 F. Supp. 2d at 1357—is totally inapposite here.[12]

All that remains is QSGI's repeated claim to consequential damages in the form of "lost profits" and "lost business".  (Compl. ¶¶ 17, 18, 26, 31.)  But consequential damages are not recoverable under FDUTPA.  *Eclipse Med.*, 262 F. Supp. 2d at 1357 ("Florida courts specifically reject the recovery of consequential damages under

---

[12] Moreover, QSGI alleges that it purchased used IBM mainframe computers from third parties (not from IBM) and resold these computers to end customers.  (Compl. ¶ 11.)  But FDUTPA provides remedies for harms arising out of *consumer* transactions.  *See Maxxim Med., Inc. v. Prof'l Hosp. Supply, Inc.* (*In re Maxxim Med. Grp.*), 434 B.R. 660, 693 (Bankr. M.D. Fla. 2010) (holding that 2001 amendment to FDUTPA made damages remedies available to businesses, but only to extent that the alleged tortious conduct resulted from a "consumer transaction").  For the purposes of the alleged market for used IBM mainframes, QSGI is not a "consumer" of used IBM mainframes within the meaning of FDUTPA, nor was IBM a party to any consumer transaction.  Accordingly, QSGI's claim may be dismissed for failure to state a FDUTPA claim.  *See id.* (holding that medical supply company, which did not purchase goods or services from defendant, was not acting as consumer and could not bring FDUTPA claim); *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1350 (S.D. Fla. 2009) (finding plaintiff, as non-consumer, ineligible to seek damages under FDUTPA).  *But see Kertesz*, 635 F. Supp. 2d at 1350 (noting split in authority regarding application of FDUTPA to non-consumers).

FDUTPA.").  Because QSGI failed to plead facts sufficient to show actual damages under FDUTPA, the claim should be dismissed to the extent it seeks such relief.

<u>**CONCLUSION**</u>

For the foregoing reasons, IBM and IGF request that this Court dismiss QSGI's Complaint with prejudice.

Dated: September 26, 2011

Respectfully submitted,

/s/ Laura Besvinick
Laura Besvinick
Florida Bar No. 391158
HOGAN LOVELLS US LLP
1111 Brickell Avenue
Suite 1900
Miami, FL 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550
Laura.Besvinick@HoganLovells.com

Eric J. Stock*
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: 212-918-3000
Facsimile: 212-918-3100
Eric.Stock@hoganlovells.com

Evan R. Chesler*
Richard J. Stark*
Teena-Ann V. Sankoorikal*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: 212-474-1000
Facsimile: 212-474-3700
echesler@cravath.com
rstark@cravath.com
tsankoorikal@cravath.com
     *Admitted Pro Hac Vice


*Counsel for Defendants IBM Global
Financing and International Business
Machines Corporation*

*Of Counsel:*

Ty Cobb
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
Ty.Cobb@HoganLovells.com

## <u>CERTIFICATE OF SERVICE</u>

   I HEREBY CERTIFY that, on this 26th day of September 2011, a true and

correct copy of the foregoing was electronically filed with the Clerk of Court using

CM/ECF.  Copies of the foregoing document will be served upon interested counsel

either via transmission of Notices of Electronic Filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.


       /s/ Laura Besvinick
       Laura Besvinick

## QSGI, INC. SERVICE LIST

Juan Pablo Bauta, II
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222

Case A. Dam
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222
Email: cxd@ferrarolaw.com