UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
No. 09:11-cv-80880-KLR

QSGI, Inc., a Delaware Corporation,

    Plaintiff,

v.

IBM GLOBAL FINANCING, a Division of
International Business Machines Corp., and
INTERNATIONAL BUSINESS MACHINES
CORP., Parent to and/or d/b/a IBM GLOBAL
FINANCING,

    Defendants.
_____/

### PLAINTIFF'S RESPONSE TO DEFENDANTS IBM AND IBM GLOBAL FINANCING'S MOTION TO DISMISS THE COMPLAINT

Plaintiff, by and through undersigned counsel, hereby responds to Defendants IBM and IBM Global Financing's Motion to Dismiss the Complaint. In support thereof, Plaintiff states as follows:

### INTRODUCTION

On or about August 3, 2011, Plaintiff, QSGI, Inc. ("QSGI") filed this action against INTERNATIONAL BUSINESS MACHINES CORPORATION's ("IBM") and IBM Global Financing ("IGF") alleging that IBM's recent policy of refusing to sell certain parts and micro-codes to QSGI violates the Florida Antitrust Act and the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). Complaint at ¶ 2. More specifically, QSGI alleged that it was engaged in the business of purchasing, selling and servicing used IBM mainframe computers. *Id.* at ¶ 11. IBM mainframe computers use proprietary software that is licensed to the purchaser of the mainframe computer. *Id.* at ¶ 12. The cost of licensing is directly correlated to the

computer capacity being used. *Id.* QSGI's business specifically consisted of modifying the capacity of these computers and selling same to consumers who were interested in saving substantial amounts of money in licensing fees. *Id.* at ¶ 12-14. However, to modify these mainframe computers, QSGI had to purchase certain parts and micro-codes exclusively controlled by IBM. *Id.* at 13. For years, QSGI, the second largest seller of used IBM mainframe computers, was able to freely purchase these products from IBM. *Id.* at ¶ 14 and 15. However, in or around 2007, IBM used its monopoly power to institute a policy change whereupon it would no longer sell QSGI the necessary parts and micro-code until after the mainframe computer had been installed and the consumer had been paying the licensing fees required for a full-capacity computer for six months. *Id.* at ¶ 16. This policy, however, did not extend to IGF –QSGI's main competitor. *Id.* at ¶¶ 9 and 16. Inevitably, IBM's policy drove QSGI off the market, thereby making IGF the main source of used IBM mainframe computers and forcing "all potential customers to deal with IGF at uncompetitive prices. *Id.* at ¶ 17.

Despite the clarity of QSGI's Complaint, on September 26, 2011, Defendants moved to dismiss same on the grounds that 1) IGF is an unincorporated division of IBM and, as such, cannot be sued; and 2) that QSGI has failed to state a claim for which relief may be granted. (ECF No. 19).

Plaintiff agrees that based on IBM's representations and submissions, IGF is an unincorporated division of IBM and thus not a proper party to this case. Consequently, dismissal of IGF would be appropriate. Plaintiff, however, contests IBM's allegations that QSGI has failed to allege a claim that is plausible on its face. IBM's arguments in this regard misinterpret the applicable standard and distort the allegations set forth in the Complaint. Therefore, for these and other reasons more fully set forth below, this Court should deny Defendants' Motion.

## MEMORANDUM OF LAW

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to plaintiff. *Miree v. Dekalb County, GA.*, 433 U.S. 25, 27 n.2 (1977). A claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Indeed, all that is required is that the allegations "raise a reasonable expectation that discovery will reveal evidence" in support of the claim. *Id.* Therefore, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Spanish Broad. System of Florida, Inc. v. Clear Channel Comms., Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004). This is particularly true in the context of antitrust litigation where "dismissals are particularly disfavored." *Id.*; *see also Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir.1994) (same).

### I.     QSGI HAS PLED AN ANTITRUST CLAIM ON ITS FACE.

"Florida courts have required plaintiffs to allege and prove three elements to establish an antitrust claim: 1) a specifically defined market; 2) that defendant had the ability to affect the price or output; and 3) that the plaintiff's exclusion from the market did affect or was intended to affect the price or supply of goods in the market." *Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, No. 96-29-CIV-T-17C, 1998 WL 182418 *5 (M.D. Fla., March 18, 1998) (citing *Greenberg v. Mount Sinai Med. Ctr.*, 629 So. 2d 252, 257 (Fla. 3d DCA 1993).

A simple reading of the Complaint reveals QSGI pled each of the elements set forth above, and provided sufficient factual allegations to support each of those elements. QSGI specifically alleged that it was the second largest seller of used IBM mainframe computers in the U.S.

3

market, and that it operated in direct competition with IGF. Complaint at ¶¶ 11, 15 and 19. QSGI further alleged that IBM used its monopoly power to gain tactical advantage in the market. By refusing to sell the necessary parts and micro-code to QSGI while continuing to sell same to IGF, IBM drove QSGI off the market, thereby eliminating a less expensive alternative from the market, and forcing potential customers to deal exclusively with IGF at uncompetitive prices. *Id.* at ¶¶ 16-21.

Despite the fact that these allegations comply with the mandates of Florida's antitrust laws and the requirements of notice pleadings set forth in Rule 8(a) of the Federal Rule of Civil Procedure, Defendant, in an effort to prove otherwise, draw support from cases that are clearly distinguishable from this matter. Defendants' main contention is that QSGI has not pled "antitrust injury" because like the plaintiff in *Spanish Broadcasting, supra,* QSGI somehow failed to "offer any specific allegations from which an inference can plausibly be drawn that its alleged injury necessarily resulted in harm to competition." (ECF No. 19 at p.9). Defendants, however, fail to recite the allegations in *Spanish Broadcasting*. Those allegations speak for themselves and demonstrate that comparing that case to this matter is comparing apples to oranges. In *Spanish Broadcasting*, the plaintiff alleged as follows:

> CC and HBC have conspired to make it more difficult for SBS to acquire new radio stations by bidding up prices and by wrongfully appropriating business opportunities created by SBS
>
> CC and HBC have induced various SBS employees to breach their contracts and join HBC.
>
> CC hindered SBS's ability to raise capital by spreading rumors about a SBS executive and by threatening to withdraw CC's own business from an underwriting firm if it worked with SBS; and
>
> CC leveraged its ownership of both concert venues and a Hispanic entertainment company in order to discourage advertisers from purchasing time on SBS.

*Spanish Broadcasting*, 376 F.3d at 1070. Unlike QSGI, *Spanish Broadcasting* conspicuously failed to allege any harm to consumers at large, and provided no facts supporting an inference that as a result of the defendants' actions those wishing to advertise their products had been deprived of a less expensive alternative. By alleging that IBM's policy drove QSGI off the market, forcing costumers to deal exclusively with IGF at uncompetitive prices, QSGI has pled public harm. (ECF No. 19 at p. 5).

Defendants further argue Plaintiff did not plead "antitrust injury" because "QSGI . . . failed to allege what its own market share was before and after IBM's purported adoption of the six-month rule in 2007, how many competitors are in the market for used IBM mainframe computers, or why QSGI's exit from the market would result in uncompetitive prices to customers." (ECF No. 7). Defendants are unable to cite any Florida cases imposing such requirements on antitrust plaintiffs. Instead, Defendants rely on two cases from New York and Georgia which are wholly distinguishable from this matter.

Defendants would have this Court believe that in *George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136 (2d Cir. 1998) the court dismissed the antitrust complaint because plaintiff failed to allege its market share. However, the truth of the matter is that the complaint was deficient because plaintiff completely failed to allege that the "the challenged action had an actual adverse effect on competition as a whole in the relevant market." *Id.* at 139. Plaintiff also lacked standing because it was neither a consumer nor a competitor in the market in which trade was restrained. *Id.* at 140. Likewise, in *Glades Pharms, LLC v. Murphy*, No. 1:06-CV-0940, 2006 WL 3684625 (N.D. Ga. Dec. 12, 2006), the Northern District of Georgia did not dismiss the complaint solely because plaintiff failed to allege how many competitors were in the relevant market. To the contrary, the complaint failed because 1) it did not allege that there was an

5

agreement; 2) even if there was an agreement, it did not specify the nature of same; 3) there were no facts suggesting interference with the market or an anticompetitive effect; and 4) the complaint did not specify the market in which the supposedly anticompetitive effects took place. *Id.* at *3-4.

By alleging that IBM's policy diverted sales from QSGI, and caused consumers to obtain the same product at uncompetitive prices, Plaintiff has pled "antitrust injury." QSGI has also pled a relevant market— the U.S. market for used IBM mainframe computers. Complaint at ¶ 11 and 15. Indeed, this case is virtually indistinguishable from *Global Candle Gallery Licensing Co. v. Nabozny*, No. 8:08-cv-2532-T-30TGW., 2009 WL 3852794 at *2-3 (M.D. Fla. Nov. 18, 2009), where the Middle District of Florida found that the defendant's counterclaim sufficiently alleged "antitrust injury" and provided sufficient information about the relevant market. *Id.* In *Nabozny*, defendant alleged that:

> [Plaintiff's] anti-competitive actions have directly and proximately caused actual and foreseeable economic damages to Kollar by diverting sales from Kollar to Global Candle and inhibiting Kollar from effectively competing in the relevant market. Kollar also alleges that as a result of Global Candle's anti-competitive actions, Kollar has "suffered damages to his business, including the loss of present and future profits, and the loss of customers and potential customers. *Id.* Kollar states that Global Candle's anti-competitive actions have "wrongfully suppressed competition in the relevant market.

*Id.* Defendant described the relevant market as "decorative candles manufactured according to a method of forming a candle with multiple peelable color layers." *Id.* At no time did the court require the anti-trust claimant to specify its market share or the number of competitors in the market. This is not surprising, especially since imposing such requirements at this juncture would force claimants to engage in a demand-supply analysis that would effectively require them to prove their case in the complaint. That, however, is not the purpose of notice pleadings. *See Conley v. Gibson*, 355 U.S. 41, 47(1957) (notice pleadings are intended to "give

the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.). *Twombly* itself, on which Defendants rely, states that "a complaint ... does not need detailed factual allegations." 550 U.S. at 555.

Finally, Defendants claim that even if QSGI alleged injury to competition, such allegations are deficient because they are "wholly conclusory [and to the] effect that IBM used its purported market power to 'injure competition,' 'restrict competition' and 'render it impossible for competition to exist.'" (ECF No. 19 at p. 9-10) Once again, Defendants fail to note that QSGI also alleged that it was the second largest seller of used IBM mainframe computers; that QSGI marketed its products to consumers who did not need the full capacity of IBM's computers and were thus interested in saving money by purchasing QSGI's modified product, and that by driving QSGI off the market, IBM effectively deprived customers of the ability to purchase a substantially more economical product. These allegations are more detailed than those in *Nabozny*, *supra*, and this Court should thus deny Defendants' Motion. *See Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir.2005) (recognizing that "antitrust cases are . . . typically inappropriate for a Rule 12 dismissal") (internal quotations and citations omitted).

Assuming, as this Court must, that QSGI's allegations are true, and drawing all inferences in the light most favorable to Plaintiff, QSGI has alleged an antitrust claim that is plausible on its face, and dismissal is thus inappropriate.

## II. QSGI HAS PLED A FDUTPA CLAIM ON ITS FACE

Defendants also call for a dismissal of QSGI's FDUTPA claim on the grounds that such claim is entirely based on QSGI's antitrust claim, and, therefore, because the antitrust claim supposedly fails, the FDUTPA claim must also fail. Defendants' argument is without merit.

First, assuming such "domino effect" applies, Defendants' Motion must be denied because as set forth in Section I of this Memorandum of Law, QSGI has pled an antitrust claim that is plausible on its face.

Second, Defendants' argument overlooks the fact that while a FDUTPA claim may be alleged as a "*per se* violation premised on the violation of another law proscribing unfair or deceptive practice," *Hap v. Toll Jupiter Ltd P'ship*, No. 07-81027-CIV, 2009 WL 18938, at *9 (S.D. Fla. Jan. 28, 2009) (Ryskamp, J.), that is not the only means of raising a FDUTPA claim. A "claim for damages under [the] FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Information*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010). Independently of whether QSGI's antitrust claim fails, QSGI has pled all the elements of a FDUTPA claim—elements which are different from those a plaintiff must prove in an antitrust claim—and dismissal is thus inappropriate. *Cf. Marc Anthony Builders, Inc. v. Javic Properties, LLC*, No. 8:11–CV–00432–EAK–AEP., 2011 WL 2709882 at *4 (M.D. Fla., July 12, 2011) (finding that "because the standard for determining a violation of the Copyright Act and a violation of FDUTPA are not the same, there is no inherent reason to dismiss one if the other is dismissed).

### A. <u>QSGI Pled The Existence of an Unfair Practice</u>

"An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous *or substantially injurious to consumers*." *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (emphasis added). QSGI has alleged a practice of this kind. Specifically, QSGI alleged that Defendants "engaged in a deceptive and unfair trade practice by controlling QSGI's ability to sell and modify used IBM mainframe computers for no reason other than to exercise its

8

monopoly power and gain market share for IBM and IGF." Complaint at ¶ 25. QSGI supported this assertion by further alleging that Defendants' policy drove QSGI off the market, thereby depriving consumers of QSGI's more economical product and forcing them to deal with IGF at "uncompetitive prices." Defendants cannot seriously contend that forcing consumers to purchase a considerably more expensive product is not injurious and thus unfair. *See id.* at 1312-1313 (denying defendants' motion to dismiss plaintiff's FDUTPA claim where plaintiff alleged that defendants' "scheme was designed to increase their profits to the detriment of consumers.")

### B. *QSGI Pled Causation and Actual Damages*

QSGI has also pled the remaining elements of a FDUTPA claim; namely, causation and actual damages.

In its Complaint, QSGI specifically alleged that as a direct and proximate result of Defendants' unfair practice, it has suffered actual damages. Complaint at ¶ 25. As Defendants point out, "actual damages under [the] FDUTPA is a term of art, defined by Florida courts as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered ..." *Eclipse Med, Inc. v. Am. Hydro-Surg. Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999). Contrary to what Defendants would have this Court believe, QSGI has pled facts which, looked in the light most favorable to the non-movant, show that Defendants' practices have substantially affected the value of mainframe computers. Prior to 2007, QSGI was able to modify the capacity of IBM mainframe computers and subsequently sell same to consumers interested in saving substantial amounts of money in licensing fees. However, with the adoption of the six-month rule, QSGI became unable to sell its now unmodifiable computers, inevitably causing its inventory to become worthless and driving QSGI off the market. The six-month rule also

eliminated the value of the servicing contracts QSGI sold together with its modified mainframe computers. Once QSGI lost the ability to sell computers, it also lost the ability to sell any servicing contracts. These allegations demonstrate that IBM's six-month rule significantly altered the value of the product, reducing the value of QSGI's inventory to nothing. QSGI has thus satisfied FDUTPA's causation and "actual damages" requirements.

Therefore, taking plaintiff's allegations as true, and drawing all inferences in plaintiff's favor, QSGI has pled a FDUTPA claim that is plausible on its face.

### III.   ASSUMIMING QSGI'S COMPLAINT FAILS TO SATISFY THE MANDATES OF RULE 12(b)(6), DISMISSAL WITH PREJUDICE IS NOT THE APPROPRIATE REMEDY

Dismissal with prejudice of a case for failure to comply with the pleading rules is a severe sanction, *Friendlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985), that requires strong justification. *Spera v. State*, 971 So. 2d 754 (Fla. 2007) ("[i]n a civil context, striking pleadings and dismissing with prejudice are considered severe sanctions that require strong justification"). Therefore, assuming QSGI has failed to assert claims for which relief may be granted, dismissal with prejudice is not the appropriate remedy. Instead, this Court should allow QSGI to amend its complaint or, in extreme circumstances, dismiss this matter *without* prejudice.

### CONCLUSION

Taking, as this Court must, QSGI's allegations as true, and drawing all inferences in QSGI's favor, QSGI has pled a claim that it is plausible on its face. Even assuming, *arguendo*, that the Complaint is somehow deficient, dismissal with prejudice is not the appropriate remedy, as that is a severe sanction that would require a strong justification not here present.

Wherefore, for the reasons set forth herein, Plaintiff respectfully requests that this Court enter an Order **DENYING** Defendants' Motion to Dismiss with Prejudice.

Respectfully submitted,

THE FERRARO LAW FIRM, P.A.
*Attorneys for the Plaintiff*
4000 Ponce de Leon Blvd.
Suite 700
Miami, FL 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By: _____
Juan P. Bauta
Fla. Bar No.: 894060

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on all counsel of record this 28th day of Ocober, 2011.

THE FERRARO LAW FIRM, P.A.

By: _____
Juan P. Bauta
Fla. Bar No.: 894060

11