UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 09:11-cv-80880-KLR

QSGI, INC., a Delaware Corporation,

        Plaintiff,

v.

IBM GLOBAL FINANCING, a Division of International Business Machines Corporation, INTERNATIONAL BUSINESS MACHINES CORPORATION, Parent to and/or d/b/a IBM GLOBAL FINANCING,

        Defendants.

**DEFENDANTS IBM AND IBM GLOBAL FINANCING'S REPLY TO QSGI's RESPONSE TO IBM AND IBM GLOBAL FINANCING'S MOTION TO DISMISS THE COMPLAINT AND SUPPORTING MEMORANDUM**

## PRELIMINARY STATEMENT

QSGI's Response does not (and cannot) fix the fundamental flaw in QSGI's Complaint—that it has specifically pleaded only allegations of harm to itself, not harm to competition. QSGI alleges that it was a reseller of used IBM mainframes; that it was driven from the market; and that it suffered losses. (Response at 3-4; Compl. ¶¶ 15-18.) Those allegations address only the purported harm to QSGI. They simply cannot suffice to show that competition itself was adversely affected. In addition to those deficient allegations, QSGI points to one more: that unnamed "potential customers" were "forc[ed] . . . to deal exclusively with IGF at uncompetitive prices". (Response at 4; Compl. ¶ 17.) This lone allegation is merely conclusory and unsupported and, as a matter of law, should be disregarded.

For its antitrust claim to survive dismissal, QSGI was required to allege specific facts supporting an injury to the competitive process. The Complaint does not do so and therefore must be dismissed under *Twombly* and *Spanish Broadcasting*.

## ARGUMENT

### I.   QSGI HAS NOT ALLEGED AN ANTITRUST INJURY.

In response to IBM's motion, QSGI argues that it has adequately pleaded antitrust injury and that the 11th Circuit's decision in *Spanish Broadcasting* is inapposite. QSGI's arguments are without merit.

Relying on paragraphs 15-21 of the Complaint, QSGI asserts that its allegations are sufficient to withstand dismissal. (Response at 3-5.) But the cited paragraphs do not allege harm to competition. The factual allegations therein suggest only that (i) QSGI was the largest competitor to IBM in the supposed used IBM mainframe market (Compl. ¶ 15); (ii) QSGI was forced out of the market by IBM's

behavior (*id.* ¶ 17); and (iii) that QSGI's exit "forc[ed] potential customers to deal exclusively with IGF at uncompetitive prices" (Response at 4; *see* Compl. ¶¶ 17-18). These allegations cognizably support only the contention that QSGI—rather than consumers or competition—has been harmed.

To avoid dismissal, QSGI needed to allege facts indicating "harm to competition in general, rather than merely damage to an individual competitor". *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comms., Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004). QSGI needed to allege specific harm to the marketplace, such as "specific damage done to consumers". *Id.* at 1072 (*citing Caribbean Broad. Sys., Ltd v. Cable & Wireless PLC*, 148 F.3d 1080, 1086-87 (D.C. Cir. 1998) (dismissal denied due to specific allegations of actual increased prices to consumers)). QSGI failed to do so.

QSGI's conclusory allegation that its exit from the market led to "uncompetitive prices" (Compl. ¶ 17)—the sole purported market harm identified by QSGI—is insufficient to sustain its antitrust claim. Under *Twombly*, QSGI was obligated to plead specific facts explaining why it is more than simply *conceivable* that IBM's conduct would have led to uncompetitive prices—it must be plausible under the applicable facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint is barren of such facts, and merely parrots the legal standard. QSGI's mere "formulaic recitation of the elements of [its antitrust] cause of action will not do", *id.* at 555, and warrants dismissal.

The Eleventh Circuit's decision in *Spanish Broadcasting* is directly on point and controlling. The court there dismissed the same type of claim alleged by QSGI. Like QSGI, the plaintiff, Spanish Broadcasting System ("SBS"), argued that it was the

2

primary competitor to the defendant, Hispanic Broadcasting Channel ("HBC"); that "unfair" practices by HBC and Clear Channel ("CC") had injured SBS; and that the alleged practices therefore "inherently damage[d] competition in that market". *Spanish Broad.*, 376 F.3d at 1072. The Court found that "[a]lthough damage to a critical competitor *may* also damage competition in general, [the plaintiff] bears the burden of drawing that implication with specific factual allegations". *Id.* at 1072-73 (emphasis in original). Because SBS had not done so, dismissal of the complaint was appropriate. *Id.* at 1073.

The same is true here for QSGI's Complaint. QSGI nowhere provides the required "specific factual allegations" about damage to "competition in general".[1] Indeed, QSGI fails to plead *any* specific facts about market conditions: QSGI provides no information on prices, customers, or competitors (other than to allege that QSGI itself has been forced out of the market). Such allegations are essential to push a putative antitrust complaint over the line separating the conclusory and insubstantial from the plausible.

*George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136 (2d Cir. 1998), and *Glades Pharmaceuticals, LLC v. Murphy*, No. 1:06-CV-0940, 2006 WL 3694625 (N.D. Ga. Dec. 12, 2006), further illustrate the point. In both cases, the courts held that allegations of some specific facts regarding market conditions, including, for example, market share information and competitor entrance data, were required for one to infer plausibly that injury to a competitor resulted in antitrust injury. Lacking such

---

[1] QSGI has, at most, added to SBS's allegations only the conclusory assertion that resulting prices for consumers will be "uncompetitive", but a naked assertion without specific factual allegations in support cannot save QSGI's claim. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339-40 (11th Cir. 2010) (conclusory allegation of "harm to competition" is insufficient to survive a motion to dismiss).

supporting allegations, the antitrust claims in both cases were dismissed. *See George Haug*, 148 F.3d at 140 (market share data could have permitted assessment of the extent to which competition was decreased); *Glades Pharms.*, 2006 WL 3694625, at *3-5 ("vague assertion" that competitor entry would lead to "lower prices to consumers" does not "allege sufficient anticompetitive effect").[2]

QSGI's reliance on *Global Candle Gallery Licensing Co. v. Nabozny*, No. 8:08-CV-2532, 2009 WL 3852794 (M.D. Fla. Nov. 18, 2009), is unavailing. The *Global Candle* antitrust plaintiff, unlike QSGI, *did* make specific allegations and *did* address market share. For example, the *Global Candle* plaintiff alleged that the putative monopolist had acquired and maintained "more than 50% of the relevant market" through fraudulent enforcement of a patent (Nabozny Ans. & Countercl. ¶¶ 52-55, 2009 WL 1256362 (Feb. 5, 2009)), and that there was a danger of future enforcement actions—such as the one against the antitrust plaintiff—that would drive that figure up still higher (*id.* at ¶¶ 56, 62). No such specific allegations about market harm have been made here by QSGI.

Finally, QSGI's conclusory allegations about purportedly uncompetitive prices should be disregarded because they are contradicted by other specific factual allegations in the Complaint. *See United States ex rel. Carroll v. JFK Med. Ctr.*, No. 01-

---

[2] QSGI's attempt to trivialize IBM's argument here (Response at 5) misses the mark. The defect in QSGI's Complaint is no mere technical flaw. Rather, the point is that without adequate allegations about the structure of the market, QSGI cannot have made a plausible or sufficient claim of harm to the market, which it is absolutely required to do. QSGI's attempts to distinguish *Georg Haug* and *Glades Pharmaceuticals* on the facts also fail. Each case clearly supports the proposition that a "bald assertion of 'harm to competition' is insufficient to state a claim". *Glades Pharms.*, 2006 WL 3694625, at *3-4 (also stating that antitrust plaintiff "must have pleaded enough data so that each element of the alleged antitrust violations can be properly identified") (internal citations omitted); *George Haug*, 148 F.3d at 139 (plaintiff has burden of demonstrating, "as a threshold matter, that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market") (emphasis in original) (internal citations omitted). This proposition is fatal to QSGI's Complaint.

8158-CIV, 2002 WL 31941007, at *2 (S.D. Fla. Nov. 15, 2002) (Ryskamp, J.) (court not required to credit "internally inconsistent" allegations). For example, QSGI claims to have purchased used IBM mainframe computers on the "open market". (Compl. ¶ 11.) If used IBM mainframe computers are available for purchase on the "open market", then QSGI is not the only entity that can purchase them. There is nothing in the Complaint to suggest that customers cannot buy them too, or that the elimination of QSGI's middleman services actually reduced the supply of used IBM mainframe computers. Elsewhere, QSGI alleges that IBM has only "approximately 35% of the new mainframe computer market" (Compl. ¶ 7), leaving 65% of the market to competitors. This allegation too is inconsistent with QSGI's antitrust claim. Taken as a whole, QSGI's complaint fails to allege harm to competition and therefore should be dismissed.

## II.     QSGI HAS NOT ALLEGED A FDUTPA VIOLATION.

QSGI argues in its Response that its FDUTPA claim should survive even if its antitrust claim is dismissed because it has separately alleged an unfair practice that is injurious to consumers. (Response at 8-9.) QSGI has done no such thing. The Complaint specifically alleges that IBM's use of its "monopoly power" is the "unfair business practice" at issue in the FDUPTA claim. (Compl. ¶ 25.) QSGI cannot seriously contend that a purported claim for abuse of "monopoly power" is separate and independent from its antitrust claim. QSGI even acknowledges that its FDUPTA claim is premised on IBM's supposedly "uncompetitive prices", which is the gravamen of its antitrust claim. (Response at 9.) Clearly, the two claims rise and fall together.

Moreover, QSGI has not alleged "actual damages", which QSGI acknowledges to be a necessary element of a FDUPTA claim (Response at 9). In the Complaint, QSGI alleged only that it suffered "lost profits, lost business and [has] been

5

rendered unable to compete" in the marketplace. (Compl. ¶ 26.) As set out in IBM's opening brief, such consequential damages are not "actual damages" under FDUPTA. (Motion at 13-14.) In response, QSGI now attempts to cast its pleadings as alleging that IBM diminished the value of QSGI's products and services (Response at 9-10), but that is just a different way of stating that QSGI lost profits and business. In addition, the definition of "actual damages" requires an exchange between the parties: the purchase of goods or services "according to [a] contract". *See Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st Dist. Ct. App. 1985) (internal citations omitted). Here, there was no alleged exchange or contract between IBM and QSGI and, therefore, there is no cognizable allegation of actual damages.

### III. DISMISSAL OF QSGI'S COMPLAINT WITH PREJUDICE IS APPROPRIATE.

QSGI does not suggest in its Response that there are any *specific* facts that it would (or could) add to the Complaint to remedy its failure to allege antitrust injury.[3] Dismissal of the Complaint with prejudice is, therefore, appropriate. *See Aquatherm Indus. v. Fla. Power & Light Co.*, 971 F. Supp. 1419, 1424-25 (M.D. Fla. 1997) (dismissing "conclusory and speculative" antitrust claims with prejudice), *aff'd* 145 F.3d 1258 (11th Cir. 1998).[4]

---

[3] Indeed, we note that QSGI has already amended its complaint twice. *See* Dkt. Nos. 1, 5, and 7.

[4] QSGI's cited legal authority does not justify granting leave to amend the Complaint. *Spera v. State*, 971 So. 2d 754 (Fla. 2007), was decided under the Florida Rules of Civil Procedure, which renders it inapplicable here. In *Friedlander v. Nims*, 755 F.2d 810, 812 (11th Cir. 1985), plaintiff called the deficiencies in the complaint "an error of the scrivener". QSGI's failings are hardly an "error of the scrivener".

Dated: November 7, 2011

Respectfully submitted,

s/ Laura Besvinick
Laura Besvinick
Florida Bar No. 391158
HOGAN LOVELLS US LLP
1111 Brickell Avenue
Suite 1900
Miami, FL 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550
Laura.Besvinick@HoganLovells.com

Ty Cobb*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
Ty.Cobb@HoganLovells.com

Eric J. Stock*
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: 212-918-3000
Facsimile: 212-918-3100
Eric.Stock@hoganlovells.com

        Evan R. Chesler*
        Richard J. Stark*
        Teena-Ann V. Sankoorikal*
        CRAVATH, SWAINE & MOORE LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
        Telephone: 212-474-1000
        Facsimile: 212-474-3700
        echesler@cravath.com
        rstark@cravath.com
        tsankoorikal@cravath.com
          *Admitted Pro Hac Vice*

*Counsel for Defendants IBM Global Financing and International Business Machines Corporation*

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 7th day of November 2011, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/ Laura Besvinick
        Laura Besvinick
        Florida Bar No. 391158
        HOGAN LOVELLS US LLP
        1111 Brickell Avenue
        Suite 1900
        Miami, FL 33131
        Telephone:  305-459-6500
        Facsimile:  305-459-6550
        Laura.Besvinick@HoganLovells.com

        Ty Cobb*
        HOGAN LOVELLS US LLP
        Columbia Square
        555 Thirteenth Street, NW
        Washington, DC 20004
        Telephone:  202-637-5600
        Facsimile:  202-637-5910
        Ty.Cobb@HoganLovells.com

        Eric J. Stock*
        HOGAN LOVELLS US LLP
        875 Third Avenue
        New York, NY 10022
        Telephone:  212-918-3000
        Facsimile:  212-918-3100
        Eric.Stock@HoganLovells.com

        Evan R. Chesler*
        Richard J. Stark*
        Teena-Ann V. Sankoorikal*
        CRAVATH, SWAINE & MOORE LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
        Telephone: 212-474-1000
        Facsimile: 212-474-3700
        echesler@cravath.com
        rstark@cravath.com
        tsankoorikal@cravath.com
           *Admitted Pro Hac Vice*

*Counsel for Defendants IBM Global Financing and International Business Machines Corporation*

## **QSGI, INC. SERVICE LIST**

Juan Pablo Bauta, II
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222

Case A. Dam
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222
Email: cxd@ferrarolaw.com