**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

QSGI, INC.,

*Plaintiff*,

v.

IBM GLOBAL FINANCING and
INTERNATIONAL BUSINESS
MACHINES CORPORATION,

*Defendants*.

Case No. 09:11-cv-80880-KLR

**REDACTED**[*]

**MOTION TO DISMISS WITH PREJUDICE**
**PLAINTIFF'S SECOND AMENDED COMPLAINT AND**
**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**

---

[*] Defendants file this redacted Motion because the Motion quotes from the March 12, 2012 final transcript of the deposition of Plaintiff's corporate representative, Marc Sherman.  Defendants intend to file promptly their motion for leave to file under seal this Motion, the Sherman transcript excerpts and IBM's Announcement Letter.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT AND BACKGROUND.................................................1

STANDARD ON MOTION TO DISMISS.........................................................................6

ARGUMENT ...................................................................................................................6

I.      QSGI HAS NOT PLEADED ANTITRUST INJURY AND THUS
        LACKS ANTITRUST STANDING...........................................................................6

        A.      Applicable Legal Principles.........................................................................6

        B.      QSGI Makes No Cognizable Allegation of Antitrust Injury. .....................7

                1.      QSGI Fails To Plead Harm to Competition.....................................8

                2.      QSGI Alleges Injury Only to Itself, Not Antitrust Injury…..........11

II.     QSGI FAILS TO ALLEGE A VIOLATION OF FDUTPA..................................12

III.    QSGI'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ..........14

CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................6, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................6, 7

*CBC Cos. v. Equifax, Inc.*, 561 F.3d 569 (6th Cir. 2009) ...................................................12

*Friedlander v. Nims*, 755 F.2d 810 (11th Cir. 1985) .........................................................14

*George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136 (2d Cir. 1998) ...........8, 9

*Hap v. Toll Jupiter Ltd. P'ship*, No. 07-81027-CIV, 2009 WL 187938 (S.D. Fla. Jan. 28, 2009) .................................................................................................................12

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010)..........................10, 12

*James Cape & Sons Co. v. PCC Constr. Co.*, No. 05-C-269, 2005 WL 2176965 (E.D. Wisc. Sept. 6, 2005) ...........................................................................................10

*JES Props. Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665 (M.D. Fla. May 9, 2005) ..............................................................................13

*Kermanj v. Goldstein*, No. 09-12135, 2010 WL 4230656 (11th Cir. Oct. 27, 2010) .........6

*Mantz v. TRS Recovery Servs.*, No. 11-80580-CIV, 2011 WL 5515303 (S.D. Fla. Nov. 8, 2011) ......................................................................................................14, 15

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) ......................................................7

*Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286 (M.D. Fla. 2009).................................12

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065 (11th Cir. 2004).....................................................................................................7, 11

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991) ...........................6, 11

*Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 WL 286262 (S.D. Fla. Jan. 29, 2007) .................................................................................................6

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 6

Fed. R. Civ. P. 26(f).............................................................................................................2

Fed. R. Civ. P. 30(b)(6)..........................................................................................3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants International Business Machines Corporation ("IBM") and IBM Global Financing[1] (collectively, "Defendants" or "IBM"), move to dismiss the Second Amended Complaint filed by plaintiff QSGI, Inc. ("QSGI"), on March 28, 2012.

## PRELIMINARY STATEMENT AND BACKGROUND

This motion addresses QSGI's continued failure to plead facts sufficient to make out claims upon which relief can be granted.  In its Order granting IBM's original motion to dismiss, the Court addressed QSGI's pleading deficiencies, noting the kinds of factual allegations QSGI would need to make to present plausible claims for relief. (Order Granting Mot. to Dismiss ("Dismissal Order") at 4-5, 7-9, Mar. 14, 2012, ECF No. 49.)  Yet QSGI has not cured these deficiencies.  In fact, QSGI's pleading of antitrust injury has regressed in that QSGI's affirmative allegations effectively concede that other competitors of IBM in the alleged market have not been harmed.  Its Second Amended Complaint must therefore be dismissed. ███████████████

███████████████████████████████████████████████

███████████████████████████████████████

Plaintiff brought this suit against IBM in August 2011, alleging violations of the Florida Antitrust Act and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based upon IBM's alleged adoption of the "six-month rule" in 2007.

---

[1] QSGI again alleges that IGF is a New York corporation and that it is jointly and severally liable for any damages.  2d Am. Compl., Mar. 28, 2012, ¶¶ 5, 62, ECF No. 53.  However, QSGI stated in its opposition to IBM's prior motion to dismiss, "Plaintiff agrees that based on IBM's representations and submissions, IGF is an unincorporated division of IBM and thus not a proper party to this case.  Consequently, dismissal of IGF would be appropriate."  Pl.'s Resp. to Defs.' Mot. to Dismiss at 2, ECF No. 24.  Accordingly, because IGF is not a legal entity, claims against it should be dismissed.

(Compl., Aug. 3, 2011, ECF No. 1.)  In September 2011, IBM moved to dismiss QSGI's Amended Complaint ("Motion to Dismiss") due to QSGI's failure to plead antitrust injury.  (IBM's Mot. to Dismiss 1, Sept. 26, 2011, ECF No. 19.)

Subsequent to filing its Motion to Dismiss, IBM undertook to prepare its defense through discovery.  In October 2011, at the parties' Rule 26(f) conference, IBM learned from QSGI's counsel that many of QSGI's documents no longer exist.  (Reply in Supp. of Mot. to Compel Pl.'s Resps. to Defs.' Disc. Reqs. at 2, Mar. 3, 2012, ECF No. 44.)  On November 11, 2011, IBM served QSGI with its First Request for the Production of Documents ("Document Requests").[2]  On December 6, 2011, IBM served QSGI with its First Set of Interrogatories ("Interrogatories").[3]  Although IBM granted QSGI a number of good-faith extensions of the deadlines for QSGI's responses, QSGI failed to respond to IBM's discovery requests.

Accordingly, IBM filed a Motion to Compel Plaintiff's Responses to Defendants' Discovery Requests on February 15, 2012.  (ECF No. 40.)  Magistrate Judge Ann E. Vitunac granted IBM's motion in part on March 16, 2012, and ordered Plaintiff to respond fully to IBM's Document Requests and Interrogatories by April 2, 2012.  (Order Granting in Part Defs.' Mot. to Compel, Mar. 16, 2012, ECF No. 50.)

During the pendency of IBM's Motion to Compel, IBM deposed QSGI's CEO, Marc Sherman, concerning QSGI's destruction and retention of documents.

███████████████████████████████████████████████████████

---

[2] Mot. to Compel Pl.'s Resps. to Defs.' Disc. Reqs., Besvinick Decl., Ex. A, Feb. 15, 2012, ECF No. 40-1.

[3] *Id.*, Ex. B.

███████████████████████████████████,[4] ██████████████████████████

████████████████████████████████████████.[5]  IBM subsequently received

QSGI's responses to its Interrogatories and Document Requests.  In these responses,

QSGI admits as to a number of key elements of its claims that it possesses no documents

to support its allegations.[6]  QSGI further admits that it lacks "custody or control" of

information necessary to establish key elements of its claims.[7]  In fact, QSGI concedes

that it has absolutely no basis for the central allegation of its complaint:  that IBM

changed its policy with respect to the "six-month rule" in 2007.[8]

---

[4] Purportedly QSGI has believed that it had an actionable claim against IBM since at least 2007. *See* QSGI Inc., Quarterly Report (Form 10-Q) at 12 (Nov. 14, 2007), Besvinick Decl. Ex. 1.

[5]


[6] By its own admission, QSGI has no documents to support allegations:  (1) of IBM's monopoly power in an alleged market for used mainframes; (2) that IBM's use of this alleged monopoly power is an "unfair business practice"; (3) that IBM has engaged in a deceptive and unfair trade practice; or (4) that prior to 2007, IBM freely sold to QSGI the parts and microcode necessary for QSGI to make capacity changes to mainframes.  *See* Pl.'s Resp. to Defs.' Req. for Prod. of Docs. ("Document Response") Nos. 3, 29-30, Besvinick Decl., Ex. 2.

[7] For example, QSGI admits that it does not have all the information necessary to identify: (1) the mainframes that QSGI purportedly acquired; (2) any requests for configuration changes to an IBM mainframe or denials thereof; (3) purportedly lost sales; (4) QSGI's transactions involving used mainframes; and (5) QSGI's mainframe inventory.  *See* Pl's Unverified Resp. to Defs.' First Set of Interrogs. ("Interrogatory Response") Nos. 2-6, Besvinick Decl., Ex. 3. Moreover, QSGI has not identified a single instance following the purported adoption of the six-month rule in which IBM declined a request for an upgrade or downgrade.  *Id.* No. 3.

[8] For example, QSGI admits that it has no factual basis for its allegation of a rule change in 2007 other than the statement of the rule in an IBM pricing guide in 2007.  *See id.* at No. 1, Besvinick Decl., Ex. 3. That 2007 pricing guide, however, merely republished the six-month rule, a version of which has been in place since 2001.  *See* Dec. 11, 2001 Business Partner Announcement Letter

On March 14, 2012, this Court granted IBM's Motion to Dismiss. (Dismissal Order, ECF No. 49.)  In its Dismissal Order, the Court provided QSGI with specific guidance as to the types of factual allegations that QSGI must make—if it can— in order properly to replead its claims.  The Court noted that QSGI must make "allegations, rooted in fact, of the anticompetitive effects of the conduct alleged to violate the antitrust laws", and that such allegations may not be conclusory.  (Dismissal Order at 4, 6.)  Information that QSGI's prior complaint failed to address included "the structure of the alleged market", "IBM's market share in [that] market", QSGI's market share, the number of competitors in that market, the strength of those competitors and how competitors were impacted by the alleged change.[9]  (Dismissal Order at 5.)  The Court further noted that allegations would not be accepted as true if they were contradicted by other allegations in the complaint—a fundamental problem in QSGI's dismissed pleading.  (Dismissal Order at 6-7.)

On March 28, 2012, QSGI filed its Second Amended Complaint (actually the fourth complaint it has filed in this case).  It again alleges a violation of the Florida Antitrust Act based on alleged monopolization by IBM, this time of a purported "*world-wide*" market of "purchase, service, and sale of used IBM mainframes".  (2d Am. Compl.

---

501-265, Defs.' Mem. of Law in Supp. of Their Mot. to Seal Defs.' Mot. to Dismiss with Prejudice Pl.'s 2d Am. Compl., Dep. Tr. of Marc Sherman and IBM's Announcement Letter, Ex. 3.

[9] Because QSGI based its FDUTPA claim on its antitrust claim, failure to plead antitrust injury also proved fatal to the FDUTPA claim.  Dismissal Order at 8.  The Court further noted that QSGI's failure to plead actual damages as part of its FDUTPA claim also warranted dismissal. Dismissal Order at 8-9.

¶¶ 14-15 (emphasis added).)[10]  Just as it did before, QSGI also casts its antitrust allegations as a violation of FDUTPA.  (*See id.* ¶¶ 64-83.)

Both of QSGI's claims should be dismissed.  As to the antitrust claim, QSGI fails to address the defects noted by the Court in its Dismissal Order and thus again fails to allege the essential element of antitrust injury.  Further, QSGI's pleading demonstrates that the six-month rule, as well as QSGI's exit from the purported market, had no adverse effect on competition, because at all relevant times the competitors identified by QSGI either maintained or increased their market share while IBM's market share remained the same.  Further, QSGI fails to allege any cognizable harm to any customer.  QSGI's alleged facts undermine any assertion of harm to competition in the alleged market.  QSGI thus, as before, merely alleges injury to itself, not antitrust injury.

QSGI again bases its FDUTPA claim entirely on its antitrust claim.  Because QSGI fails to plead antitrust injury, the FDUTPA claim fails as well.  QSGI's continued failure to plead actual damages provides another basis for dismissal.

Dismissal of these claims should be with prejudice.  QSGI has had ample opportunity to address deficiencies in its pleadings.  Even with the Court's guidance, QSGI has failed to do so.  ███████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████  Amendment would be futile.

---

[10] QSGI previously alleged a U.S. market.  QSGI had no documentary support for this alleged market when it brought its lawsuit.  On April 2, 2012, in response to a document request seeking "[a]ll documents and communications concerning the definition of alleged geographic market of the 'United States of America'", QSGI answered, "None at this time."  *See* Document Response No. 28, Besvinick Decl., Ex. 2.  QSGI seems to have no documentary support for its worldwide market allegation either.  *See id.* at No. 29 ("All documents and communications concerning QSGI's allegation that IBM has monopoly power in an alleged market for used IBM mainframes. Answer: . . . None at this time.").

## STANDARD ON MOTION TO DISMISS

In order to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere recitation of the elements of a claim accompanied by conclusory allegations is insufficient, and conclusory allegations may be disregarded.  *See Iqbal*, 556 U.S. at 678-79.  Furthermore, inclusion of *some* factual allegations is not enough; instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555 (internal citations omitted).[11]

## ARGUMENT

### I.    QSGI HAS NOT PLEADED ANTITRUST INJURY AND THUS LACKS ANTITRUST STANDING.

QSGI's Second Amended Complaint fails to address the issues that led this Court to dismiss the prior complaint.  QSGI once again fails to satisfy the absolute requirement of pleading antitrust injury.  QSGI's antitrust claim should therefore be dismissed.

#### A.    Applicable Legal Principles.

Pleading harm to an individual competitor is not sufficient for antitrust standing.  Rather, antitrust standing requires *antitrust injury*—namely, that there is a

---

[11] The foregoing standard applies to a Rule 12(b)(6) motion to dismiss state-law claims over which a Federal court has jurisdiction.  *See, e.g.*, *Kermanj v. Goldstein*, No. 09-12135, 2010 WL 4230656, at *1 (11th Cir. Oct. 27, 2010).

public harm from the alleged conduct that coincides with a plaintiff's private harm.[12]  *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449-50 (11th Cir. 1991).  Where a plaintiff's antitrust claim merely alleges harm to an individual competitor, dismissal is warranted.  *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069, 1072-73, 1079 (11th Cir. 2004) ("[A]n antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor.").  Furthermore, absent factual allegations of antitrust injury—rather than merely conclusory ones—an antitrust claim will fail under *Twombly* and *Iqbal*.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.  Without such allegations, there can be no plausible claim to relief on an antitrust claim that could withstand dismissal.  *See, e.g.*, *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) ("[A] 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury." (citing *Twombly*, 550 U.S. at 557)).

## B.      QSGI Makes No Cognizable Allegation of Antitrust Injury.

The additional allegations of fact included in QSGI's Second Amended Complaint do not cure the fatal deficiencies in QSGI's pleading.  In describing the alleged marketplace, QSGI alleges no substantive facts plausibly suggesting antitrust injury.  In fact, QSGI's pleading affirmatively asserts that IBM's purported policy change has had no impact on competition.  As before, to the extent QSGI alleges any injury, it is not an injury to competition, but rather to QSGI's individual business.

---

[12] Federal antitrust standing law applies to Florida Antitrust Act claims.  *See, e.g., Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 WL 286262, at *1-2 (S.D. Fla. Jan. 29, 2007) (Federal antitrust standing law applies to questions of standing under the Florida Antitrust Act).

### 1.     QSGI Fails To Plead Harm to Competition.

QSGI fails to allege competitive harm in its Second Amended Complaint. This failure is demonstrated by QSGI's (i) allegation that IBM's market share remained the same before and after the adoption of the six-month rule; (ii) failure to allege that any competitor of IBM (other than QSGI) went out of business, or even lost market share, as a result of the purported adoption of the six-month rule; and (iii) failure to allege any cognizable injury to customers.

First, QSGI alleges that IBM's share of the alleged market for used IBM mainframe computers did not change.  QSGI alleges that "[a]t all times material hereto IBM and IGF had monopoly power . . . demonstrated by its 90% market share".  (2d. Am. Compl. ¶ 75.)  Not only does QSGI assert that IBM *had* 90% market share, but QSGI alleges that IBM currently "commands approximately 90 percent of the market".  (2d Am. Compl. ¶ 29.)  Thus, the purported policy change had absolutely no impact on IBM's purported market share. It is difficult to see how an alleged act could be anticompetitive when it did not increase the alleged monopolist's market share.  *See George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 140 (2d Cir. 1998) (affirming dismissal for lack of antitrust standing where "Plaintiff has failed to plead its own market share" or the "market share purportedly absorbed by" the defendant's alleged coconspirator).[13]

Second, QSGI does not allege any cognizable harm to other competitors of IBM.  Instead, QSGI lists eight competitors of IBM and alleges that these companies

---

[13] QSGI subsequently makes an allegation that IBM and IGF have "increased their market share of used IBM mainframes to approximately 100%".  2d Am. Compl. ¶ 83.  This allegation should be rejected as vague and conclusory.  Moreover, this allegation is properly disregarded because it is obviously at odds with the allegation that "at all times material hereto" IBM had 90% share, *id.* ¶ 75, and the allegation of other competitors in the market, *id.* ¶ 35.  *See* Dismissal Order at 4 (disregarding inconsistent allegations).

"were adversely effected [*sic*] by the sixth-month [*sic*] rule in a manner similar to QSGI".

(2d Am. Compl. ¶ 35.)  This statement is merely conclusory, as it is not supported by any

allegations of substantive fact.  None of these competitors is alleged to have gone out of

business.[14]  Further, none of these companies is alleged to have lost market share as a

result of the six-month rule.  Instead, the complaint implies that at least some of them

must have *gained* market share since, according to QSGI's allegations, IBM's share of

the alleged market has at all times remained the same.  Whatever market share QSGI lost

(which QSGI does not plead), must have been absorbed by companies other than IBM.

Accordingly, QSGI has not only failed to allege harm to competition, but has

affirmatively alleged that competition is unharmed, undermining any basis for antitrust

injury.  *See Haug*, 148 F.3d at 140.

   Third, QSGI has not alleged any cognizable harm to customers by the

purported policy change.  QSGI's central allegations on this score are a series of

---

[14] In fact, all are still in business.  *See* Atlantix Global Systems, http://www.atlantixglobal.com/about/default.aspx (last visited Apr. 8, 2012) ("Atlantix Global Systems is truly your one-stop shop for . . . used and refurbished IT hardware.  Atlantix buys, sells, leases, rents, consigns and trades just about every product line including . . . IBM . . . ."); CHS Computer Sales, http://www.bakerstreetresources.com/buy-sell-used-ibm-zseries-mainframe-systems.htm (last visited Apr. 8, 2012) ("We [b]uy and [s]ell [u]sed IBM Mainframe zSeries [s]ervers"); Epoka IT Equipment, http://www.epoka.dk/it/Products/IBM (last visited Apr. 8, 2012) ("Epoka A/S is a leading reseller of IBM [e]quipment . . . [and] we carry a wide range of refurbished and new IBM [e]quipment."); Great Lakes Computer, http://www.glcomp.com/about-us/refurbished-faqs (last visited Apr. 8, 2012) ("Great Lakes Computer's refurbished products include the latest technologies and also those hard to find end-of-life options that . . . IBM . . . customers still need."); Mainframe Services, Inc., http://mainframeservices.com/profile.html (last visited Apr. 8, 2012) ("[W]e support IBM . . . systems in the US and Europe . . . . Our Specialties [include] Hardware Up/Downgrades."); Network Systems Resellers, http://www.trustnsr.com/servers.html (last visited Apr. 8, 2012) ("NSR offers the highest quality [r]efurbished [m]idrange [s]ervers and [r]efurbished [m]ainframe [s]ervers such as . . . IBM [s]ervers available today."); Simon Systems, Inc., http://www.simonsys.com (last visited Apr. 8, 2012) ("'Industry leader in refurbished IBM solutions' . . . [s]pecializing in IBM mainframes."); Top Gun Technology, http://www.topgun-tech.com (last visited Apr. 8, 2012) ("We buy and sell used IBM zSeries mainframes and . . . servers."), Besvinick Decl. Ex. 4.

paragraphs listing customer names and what appear to be IBM mainframe machine types and QSGI-quoted prices.  (2d Am. Compl. ¶¶ 50-58.)  QSGI, however, fails to allege when these quotes were made, why the customers did not buy from QSGI, or what any specific customer in fact ended up doing.  Did they in fact buy used mainframe computers, new mainframe computers, or some other type of computer altogether?  Did they buy from IBM or from another vendor?  Did they pay higher prices than those QSGI allegedly offered?  Did their purchases include related services or maintenance?  QSGI pleads no specifics, just the broad-brush allegation that customers "were forced to buy from IGF".  (2d Am. Compl. ¶ 49.)

Even assuming that some of the identified customers ultimately bought used mainframe computers from IBM, that fact would not demonstrate that the customers paid "supra-competitive prices".  (2d Am. Compl. ¶ 28.)  The used mainframe computers that these U.S. customers purportedly acquired from IGF were most likely different than those quoted by QSGI,[15] and thus would have been priced differently.[16]  To the extent, if at all, that a customer paid more for a mainframe computer, it may very well have paid more to get more (*i.e.*, a larger, more capable computer, or better service or maintenance).  Thus, QSGI's allegations do not show that any customer paid an inflated price.

QSGI thus has not alleged any consumer harm.  This is a further ground for dismissal.  *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339-40 (11th Cir. 2010) ("plaintiff claiming [harm to competition] should point to the specific damage done

---

[15] 2d Am. Compl. ¶ 10 ("[M]ainframes are so specialized to the needs of the original purchaser that no two mainframes are exactly alike.").  New mainframes are custom manufactured in a myriad of different configurations.  Thus, no two used mainframes are alike.

[16] *Id.* ¶ 9 ("[U]sed mainframes [*sic*] prices for purchasers can range from $6,500 to over $7,500,000").

to consumers in the market" (internal quotation marks omitted)); *James Cape & Sons Co. v. PCC Constr. Co.*, No. 05-C-269, 2005 WL 2176965 (E.D. Wis. Sept. 6, 2005) (dismissing complaint for lack of antitrust injury where plaintiff failed to prove harm to consumers).[17]

### 2.   QSGI Alleges Injury Only to Itself, Not Antitrust Injury.

At bottom, as before, QSGI merely alleges that it suffered an injury to its business and offers a few wholly conclusory allegations about injury to competition. As the Court held in its Dismissal Order, this is insufficient to confer antitrust standing.

QSGI offers a few allegations concerning its own injury. For example, according to QSGI, it held an unspecified part of IBM's competitors' aggregate market share and "now has effectively 0% market share". (2d Am. Compl. ¶ 79.) But QSGI does not allege a change in any other competitor's market share attributable to IBM's six-month rule. (*See* 2d Am. Compl. ¶ 41.) Instead, as described above, QSGI affirmatively alleges that the purported aggregate share of IBM's competitors remains the same. The only specific impact that QSGI attributes to IBM's purported adoption of the six-month rule is its own exit from the business. Thus, QSGI alleges injury only to itself and not antitrust injury. *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir.

---

[17] QSGI also fails to make "allegations as to the structure" of its alleged *worldwide* market. Dismissal Order at 5. For example, QSGI fails to allege IBM's, QSGI's or any alleged competitor's worldwide market share, or the share absorbed by IBM through its purported policy change. QSGI fails to name a single customer outside of the United States, or how any such customer has been specifically damaged. Nor has QSGI alleged any facts describing any impact on purported competitors worldwide. *See* Dismissal Order at 5. QSGI does not allege any competitor's worldwide market share or that any competitor's share has been adversely impacted by IBM's purported policy change. Instead, QSGI's allegations as to market structure are limited to the United States (not the allegedly relevant *worldwide* market). *See* 2d Am. Compl. ¶¶ 3, 5, 29, 36. QSGI's antitrust claim should be dismissed for this reason as well. *See* Dismissal Order at 5-6 (reciting QSGI's failure to plead the market share by IBM and QSGI in the relevant market, failing to describe the competitive structure of the relevant market and citing authority for dismissal on those bases).

1991); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069, 1072-73, 1079 (11th Cir. 2004).

QSGI's conclusory allegations of injury to competition cannot save QSGI's antitrust claims.[18]  Numerous courts have concluded that naked assertions of harm to competition like those made by QSGI cannot withstand scrutiny under the *Twombly* and *Iqbal* pleading standard.  *See, e.g.*, *Jacobs*, 26 F.3d at 1339 (conclusory allegation of higher prices to customers insufficient plausibly to suggest actual harm to competition); *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 571-72 (6th Cir. 2009) (allegations of "restricting competition", "decreasing options" and "increasing . . . costs" insufficient to establish antitrust standing).  Moreover, QSGI's wholly conclusory allegations of harm to competition are rebutted by QSGI's affirmative factual allegations that the collective market share of IBM's competitors has not changed because of the adoption of the six-month rule.  Accordingly, QSGI's conclusory, and contradicted, allegations should be disregarded.  (Dismissal Order at 4 ("The Court disregards QSGI's conclusory allegations about purportedly uncompetitive prices because they are contradicted by other specific factual allegations in the complaint.").)

## II.      QSGI FAILS TO ALLEGE A VIOLATION OF FDUTPA.

QSGI's FDUTPA claim should be dismissed because, as before, it relies on the flawed antitrust claim, and because QSGI fails to plead actual damages.[19]

---

[18] For example, QSGI states in conclusory fashion that "IBM's six-month rule effectively destroyed the competition in the market", 2d Am. Compl. ¶ 42; that customers were "injured because they were forced to overpay IBM's supra-competitive prices", *id.* ¶ 60; that "IBM and IGF used their monopoly power to . . . drive competition from the used IBM mainframe market", *id.* ¶ 76; and that "IBM and IGF . . . eliminated competition", *id.* ¶ 77.

[19] A claim under FDUTPA has three elements:  (1) a deceptive or unfair practice, (2) causation and (3) actual damages.  *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009).

QSGI's FDUTPA allegations are merely a repackaging of its monopolization claims.  When a plaintiff's FDUTPA claim is based on the same allegations as its antitrust claim, failure to establish a violation of antitrust law is sufficient to conclude that the plaintiff has also failed to state a FDUTPA claim.  *See JES Props. Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665, at *19, n.23 (M.D. Fla. May 9, 2005).  Here, the foundation of QSGI's FDUTPA claim is its allegation that by "enact[ing] the six-month rule" IBM "engaged in an unfair and deceptive act".  (2d Am. Compl. ¶ 65.)  But this allegation is rooted solely in QSGI's primary claim that IBM used its "monopoly power to enact the six-month rule".  (*Id.*)  Because QSGI's antitrust claim must be dismissed, QSGI's FDUTPA claim cannot survive.[20]

IBM further moves to dismiss QSGI's FDUTPA claim to the extent that it purports to seek "actual damages".  This Court stated in its Dismissal Order that "[t]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties . . . ."  (Dismissal Order at 8-9) (internal citations and quotation marks omitted).  QSGI fails to allege any delivery of used mainframe computers by IBM pursuant to contract or

---

A FDUTPA claim may be alleged as "a *per se* violation premised on the violation of another law proscribing unfair or deceptive practice".  *Hap v. Toll Jupiter Ltd. P'ship*, No. 07-81027-CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 28, 2009) (Ryskamp, J.).

[20] QSGI adds a wholly conclusory allegation that the purported adoption of the six-month rule is deceptive because when companies like QSGI bought used IBM mainframes prior to the six-month rule, they did so with knowledge that those mainframes could be modified at any time.  2d Am. Compl. ¶ 69.  But IBM could not have deceived QSGI in the acquisition of used mainframes unless QSGI acquired used mainframes from IBM, which QSGI never alleges is the case.  In fact, QSGI suggests, consistent with its prior "open-market" allegation, that it acquired used mainframes from other sources.  *See* 2d Am. Compl. ¶¶ 30, 34 (discussing non-IBM sources of used IBM mainframes).

otherwise that could give rise to such actual damages. As such, QSGI's alleged damages are not actual damages compensable under the Act, and the claim should be dismissed to the extent it seeks such relief.

## III.  QSGI'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

QSGI brought this action in August 2011 and still, months into discovery, cannot file a facially sufficient pleading.[21] QSGI has had ample opportunity to replead following dismissal, and this Court need not grant further leave to amend. *See, e.g.*, *Mantz v. TRS Recovery Servs.*, No. 11-80580-CIV, 2011 WL 5515303 (S.D. Fla. Nov. 8, 2011) (dismissing complaint with prejudice after single opportunity to amend). The Court provided QSGI with painstaking detail concerning the deficiencies in its pleading, and QSGI nevertheless failed to remedy them. The Court need not indulge QSGI with an opportunity to address these deficiencies in yet another pleading. *See Friedlander v. Nims*, 755 F.2d 810, 813-14 (11th Cir. 1985) (affirming district court's dismissal of action with prejudice where the court outlined the complaint's deficiencies and plaintiff chose not to address the court's concerns).[22]

Further, allowing additional amendment to the complaint would be futile. As evidenced by QSGI's recent discovery responses, despite months of notice and opportunity for fact discovery, QSGI still has no basis for a properly pleaded antitrust

---

[21] In fact, QSGI has had years to prepare for this suit. QSGI believed that it had a cause of action against IBM in 2007, QSGI Inc., Quarterly Report (Form 10-Q) at 12 (Nov. 14, 2007), Besvinick Decl. Ex. 1, and sought to engage counsel for this case in November of 2010, Debtors-in-Possession's Application for Employment of Juan P. Bauta, II As Special Counsel Nunc Pro Tunc To November 18, 2010, No. 09-23658-EPK (Bankr. S.D. Fla. Dec. 2, 2010), Besvinick Decl. Ex. 5.

[22] Although the plaintiff in *Friedlander* did not attempt to amend its complaint, QSGI's repackaging of its Second Amended Complaint without addressing this Court's concerns has the same effect—it ignores the Court's instructions and results in a deficient pleading. *See id.*

claim.  QSGI admits that it has no evidence of fundamental elements of its claims, 

Allowing further amendment under these circumstances would be futile.  *See*

*Mantz*, 2011 WL 5515303 (dismissing with prejudice complaint of *pro se* plaintiff where

she filed her original complaint in May, an amended complaint four months later, and

where the court found that "Plaintiff [] had ample opportunity to amend and it is apparent

that permitting an additional opportunity to amend would be futile.").

## CONCLUSION

For the foregoing reasons, IBM requests that this Court dismiss QSGI's

Second Amended Complaint with prejudice.

Dated:  April 16, 2012

Respectfully submitted,

/s/ Laura Besvinick
Laura Besvinick
Florida Bar No. 391158
HOGAN LOVELLS US LLP
1111 Brickell Avenue
Suite 1900
Miami, FL 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550
Laura.Besvinick@HoganLovells.com

Evan R. Chesler*
Richard J. Stark*
Teena-Ann V. Sankoorikal*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: 212-474-1000
Facsimile: 212-474-3700
echesler@cravath.com
rstark@cravath.com
tsankoorikal@cravath.com

Ty Cobb*
Eric J. Stock*
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: 212-918-3000
Facsimile: 212-918-3100
Ty.Cobb@HoganLovells.com
Eric.Stock@HoganLovells.com

*Admitted Pro Hac Vice

Counsel for Defendants IBM Global
Financing and International Business
Machines Corporation

16

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that, on this 16th day of April 2012, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing documents will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                    /s/ Laura Besvinick
                    Laura Besvinick

## QSGI, INC. SERVICE LIST

Juan Pablo Bauta, II
Ferraro Law Firm
4000 Ponce de Leon Blvd.
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222

Case A. Dam
Ferraro Law Firm
4000 Ponce de Leon Blvd.
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222
Email: cxd@ferrarolaw.com