# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 11-80880-CIV-RYSKAMP\VITUNAC

QSGI, Inc., a Delaware Corporation,

 Plaintiff,
v.

IBM GLOBAL FINANCING, et al.

 Defendants.
_____/

**PLAINTIFF'S UNVERIFIED RESPONSE TO DEFENDANTS' IBM AND IBM GLOBAL FINANCING'S FIRST SET OF INTERROGATORIES**

 Plaintiff, QSGI, Inc., by and through undersigned counsel files its responses to Defendants' IBM and IBM GLOBAL FINANCING's First Set of Interrogatories dated December 6, 2011.

**INTERROGATORIES**

 1. Identify any and all factual bases for the assertions in paragraph 16 of QSGI's Amended Complaint that "[i]n or around 2007, IBM instituted a policy change whereupon it would no longer freely sell QSGI the parts and microcode needed to modify the capacity of the used computers" and that "IBM's policy change (hereinafter referred to as the 'six month rule') did not extend to IGF or IFG's customers". (Am.Copl.¶16.)

**Answer:** Pursuant to IBM's System Z BP pricing Guide dated July 20, 2007, modifications to Z series mainframes are not permitted for six-months.

 2. Identify each IBM mainframe that QSGI acquired, including the date of acquisition, acquisition price, and source (*i.e.*, the person or entity) from which QSGI acquired it.

1

**Answer:** Objection, question is overly broad in that it is not limited to a specific date. Without waiving its objection QSGI states that it does not have all the information requested within its custody or control but it has the following information: See attached Exhibit 1 and Exhibit 2

    3. Identify all orders or requests for upgrades, downgrades, parts, microcode or any other change to an IBM mainframe made by QSGI (or any person or entity on behalf of QSGI) or by any customer of QSGI to IGF or IBM (collectively, "orders or requests"), including:

    a. the specific part or microcode that was ordered or requested, the mainframe that was the subject of the order or request and that mainframe's installation date, and the nature of the requested change to the IBM mainframe (*e.g.*, upgrade, downgrade, other change that IBM mainframe, etc.)

    b. the entity or person who made such order or request, the date of such order or request and to whom such order or request was directed;

    c. the customer or other intended recipient of the IBM mainframe to be upgraded, downgraded, or otherwise changed pursuant to such order or request;

    d. IBM's or IGF's response (including whether the order or request was approved or denied and, if denied, IBM's or IGF's stated bases for its denial) and the date of such response; and

    e. the person and/or entity that fulfilled such order or request (if any), including (if different) the person and/or entity that installed the requested part on or made the requested change to the IBM mainframe.

**Answer:** Objection, question is overly broad in that it is not limited to a specific date. Without waiving its objection QSGI states that it does not have all the information requested within its custody or control but it has the following information: See attached as Exhibit 1

    4. For each potential or proposed sale of a used IBM mainframe that QSGI allegedly lost as a result of IBM's alleged refusal to provide parts or microcode as identified in response in Interrogatory No.3, identify:

        a. documents that set forth the proposed terms of the transaction, including the price of financial terms of that potential or proposed sale; and

        b. the computing solution that the potential customer obtained in lieu of the QSGI offering and from whom such solution was obtained.

**Answer:** QSGI states that it does not have all the information requested within its custody or control but it has the following information: See attached as Exhibit 2

    5. Identify each transaction in which QSGI sold or transferred an IBM mainframe or a part for an IBM mainframe.

**Answer:** Objection, question is overly broad in that it is not limited to a specific date or part. Without waiving its objection QSGI states that it does not have all the information requested within its custody or control but it has the following information: See attached exhibit 1.

    6. With respect to QSGI's inventory of used IBM mainframes, identify:

        a. the IBM mainframes that comprised, and the value of, QSGI's IBM mainframe inventory just prior to IBM's purported policy change alleged in paragraph 16 of the Amended Complaint;

        b. any change in the IBM mainframes that comprised, or the value of, QSGI's IBM mainframe inventory as a result of IBM's purported policy change; and

      c. the amount of money QSGI received from, the financial terms relating to, and the identity of the IBM mainframes that QSGI sold or transferred to Top Gun Technologies, Inc. or to any other person or entity following IBM's purported policy change.

**Answer:** Objection, question is overly broad in that it is not limited to a specific date. Without waiving its objection QSGI states that it does not have all the information requested within its custody or control but it has the following information: See attached Exhibit 1, Exhibit 2 and SEC filings and the QSGI bankruptcy which are public record.

    7. Identify, for each cause of action asserted in the Amended Complaint, QSGI's computation of any and all categories of damages or monetary relief claimed by QSGI under that cause of action, the documents or other information on which such computation is based and all persons with knowledge of the claimed damages.

**Answer:** Objection to the extent that this question is asking for an expert or legal opinion. Without waving its objection, QSGI states that it has suffered actual damages in the form of loss of value of inventory, sales and accompanying maintenance. QSGI has not finalized its computation of damages at this time. Such damages would be found in QSGI's SEC filings which are public record. Individuals with knowledge include Marc Sherman and Dave Meynarez.

    8. Identify the facts and circumstances relating to any documents—including but not limited to documents in storage facilities—that QSGI destroyed, discarded, or otherwise failed to preserve since January 1, 2007, including, without limitation:

      a. each document that was destroyed or discarded and the manner in which, and the reason why, it was destroyed or discarded;

    b. the storage facility or other place of storage at which each such document was stored;

    c. the date(s) that each such document was deposited or placed into storage, the date(s) on which QSGI or any person acting on behalf of QSGI decided to destroy or discard such documents or was notified that such documents were destroyed or discarded, and the date(s) that each such document was destroyed or discarded;

    d. the location, if any, of copies, duplicates or alternative sources of each destroyed or discarded document; and

    e. the person or entities with knowledge of the facts and circumstances concerning the storage and/or destruction or discarding of any documents (including relevant QSGI personnel, personnel acting on behalf of QSGI and the relevant individuals at each storage location) and a description of the relevant facts and circumstances known to such persons (including who at QSGI permitted or decided that documents be destroyed or discarded).

**Answer:** Objection overly broad as to scope and time. Without waving the objection QSGI states that it retained documents for a period of seven years in compliance with the Sarbanes-Oxley Act of 2002. QSGI's documents were maintained in two storage facilities located in New Jersey and in Minnesota. QSGI lost control of the Minnesota storage facilities when it filed for bankruptcy and the receiver assumed control of the company's assets. QSGI has learned that the receiver did not pay the monthly storage fee for the Minnesota storage facility and that at some unknown point in time, the documents which were stored at that facility where disposed of by

5

the storage facility owner. QSGI documents were never destroyed at the direction of QSGI unless the documents were duplicates or could be destroyed pursuant to the seven year retention policy. Company emails were archived at 13 month-end and year-end to DLT tapes which were maintained at the New Jersey facility located at 70 Lake Drive, Hightstown, NJ. These emails have been compiled into a database which is being searched for documents responsive to IBM's requests. QSGI has never maintained a list of every piece of paper or document which any employee may have discarded nor does QSGI maintain a list of every piece of paper or document ever created by its employees. QSGI former and current employees who have knowledge include Marc Sherman, Ed Cummings and Dave Harris.

Respectfully submitted,

THE FERRARO LAW FIRM, P.A.
*Attorneys for the Plaintiff*
4000 Ponce de Leon Blvd., Suite 700
Miami, FL 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By: _____/s/ Juan P. Bauta_____
Juan P. Bauta, II
Fla. Bar No.: 894060

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on all counsel of record this 5th day of January, 2012.

> By:    /s/ Juan P. Bauta
>         Juan P. Bauta, II
>         Fla. Bar No.: 894060