UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 09:11-cv-80880-KLR

QSGI, Inc., a Delaware Corporation,

    Plaintiff,

v.

IBM GLOBAL FINANCING, a Division of
International Business Machines Corp., and
INTERNATIONAL BUSINESS MACHINES
CORP., Parent to and/or d/b/a IBM GLOBAL
FINANCING,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE TO IBM'S MOTION TO COMPEL COMPLIANCE WITH MARCH 16, 2012 AND FOR SANCTIONS FOR NONCOMPLIANCE

Plaintiff, by and through undersigned counsel, hereby files this Response to IBM's Motion to Compel Compliance with March 16, 2012 and for Sanctions for Noncompliance pursuant to Fed. R. Civ. P. 37 and Local Rules 7.1 and 26.1. In support thereof, Plaintiff states as follows:

    1.    <u>Dorsey v. Academy Moving & Storage, Inc</u>. 423 F.2d 858, 860 (5th Cir. 1970), a case emanating from Florida, long ago established standards governing the imposition of sanctions in circumstances such as the present:

> The sanctions available under Rule 37(b) for such conduct are predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence. The sanctions are not predicated upon a party's failure to satisfy fully the requirements of a production order when the failure 'was due to inability fostered neither by its own conduct nor by circumstances within its control'. <u>Societe Internationale Pour Participations Industrielles Et</u>

    Commerciales, S.A. v. Rogers, 1958, 357 U.S. 197, 211, 78 S.Ct.
    1087, 1095, 2 L.Ed.2d 1255, 1266.

  2. As this Court will readily see, IBM's Motion to Compel, IBM's Motion to Expedite briefing and request for a hearing, are unnecessary, wasteful of the parties and Court's time and resources, and should be immediately withdrawn because it is without cause, legal basis and moreover, its attorneys' "good faith" certification is an sham. (*See*, D.E. 64, p. 15.)[1] [2] IBM knows full well, but fails to mention, that the delayed receipt and production of documents and evidence responsive to IBM's discovery was not QSGI's fault and is excusable. QSGI's documents and records have been in the possession and control of non-parties—the Securities and Exchange Commission ("SEC") and QSGI's SEC counsel, McDonald Hopkins LLC. Despite QSGI's and IBM's efforts to obtain QSGI's documents and records sooner, QSGI and IBM have been, and continue to be, at the mercy of McDonald Hopkins and the SEC, who only recently produced and allowed access to the millions upon millions of documents constituting the universe of QSGI's existing documents and records.

  3. Correspondingly, IBM has not sought to resolve QSGI's objections to IBM's discovery nor its Motion to Compel before or after filing it Motion in accordance with Rule 37,

---

[1] Fed. R. Civ. P. 37(a)(1) requires Defendant, IBM, to "include a certification that the movant has in good faith conferred or attempted to confer with the…party failing to make…discovery in an effort to obtain it without court action."

[2] Local Rule 7.1 entitled, Pre-filing Conference Required of Counsel, requires counsel to, "confer (orally or in writing), or make reasonable effort confer (orally or in writing), with all parties or non-parties who may be affected by the relief sough tin the motion in a good faith effort to resolve by agreement the issues to be raised in the motion. Counsel conferring with movant's counsel shall cooperate and act in good faith in attempting to resolve the dispute."

Local Rules 7.1 and 26.1, and this Court's Discovery Handbook. [3] Exacerbating this fatal procedural defect, IBM's Motion is also rife with hyperbole and blatant inaccuracies regarding QSGI's past conduct; the status and whereabouts of QSGI's records and documents and their production; and the reviewability of the documents produced by QSGI in March and April 2012. Contrary to IBM generous claims, QSGI has never destroyed any document outside of its document retention policies or normal business practices. *See*, M. Sherman Depo. Trans. as Exhibit A. pp. 31-82.  As of approximately April 26, 2012, QSGI possesses million upon millions of documents and records, most of which have been produced or will be produced to IBM.  Only an unknown subset of QSGI's document and records were destroyed between in 2009, and to that extent, they were destroyed by a document storage facility in Minnesota which was not properly reimbursed by the Receiver in QSGI's bankruptcy. Id. at 53-54, 63-66, and 72-82.  This is despite QSGI properly submitting bills for these storage fees. Id.

    4.    Equally untrue is IBM's claim that the documents from McDonald Hopkins LLC are unreadable, unreviewable, and unusable.  QSGI's counsel is able to read, review, search and use the same documents and records, which have been produced exactly as they were organized, stored and maintained—readable, reviewable and searchable .pdf and .tiff files with all accompanying metadata.  *See*, D.E. 64-8.  Moreover, any discrepancy between the documents and records produced and the previously agreed format is purely a consequence of QSGI and QSGI's counsel not knowing the format in which McDonald Hopkins created, organized, stored and maintained QSGI's documents and records. Id.  QSGI's agreement to produce records in the format requested (ESI)(D.E. 27, pp. 5-6) by IBM was a gratuitous agreement based upon a

---

[3] IBM's Motion requesting sanctions for QSGI's alleged failure to respond to IBM's first set of interrogatories is premature as there has been no attempt whatsoever to resolve QSGI's objections to the interrogatories.

3

mistake of fact regarding the electronic format of QSGI's existing documents and records. QSGI is only required to produce its records in the manner in which they were created, stored and maintained. It is not obligated to rearrange or reorganize these materials for IBM, let alone create new documents in an entirely new format. *See*, Section III.B.(1).b. of the Discovery Handbook.

5. IBM's Motion to Compel and corresponding Motion to Expedite where no emergency or real prejudice exists is part of an emerging discourteousness on the part of IBM. It unreasonable demands and disrespect for counsels schedule is counterproductive and contrary to those rules governing discovery practice in the Southern District. Section I.A.(1), (2) and (4) of the Discovery Practices Handbook South District of Florida entitled, Courtesy and Cooperation Among Counsel clearly provides that:

> (1) *Courtesy*. Discovery in this District is normally practiced with a spirit of cooperation and civility…Courtesy suggest that a telephone call is appropriate before taking action that might be avoided by agreement of counsel.
>
> (2) *Scheduling*. A lawyer shall normally attempt to accommodate the calendars of opposing lawyers scheduling discovery.
> ****
> (4) *Withdrawal of Motions*. If counsel are able to resolve their differences after a discovery motion or response is filed, the moving party should file a notice of withdrawal of the motion to avoid unnecessary judicial labor.

6. From the inception of this lawsuit until approximately March 21, 2012, QSGI's counsel conversed or corresponded with IBM's local Florida counsel nearly every day about every aspect of QSGI's lawsuit. As envisioned by the above guidelines, counsels' near daily

conversations fostered a spirit of cooperation out of which, among other things, IBM learned the whereabouts of QSGI's documents leading to IBM's February 2012 subpoena and the April 2012 release of all of QSGI's records and documents from the third parties that possessed and controlled them—McDonald Hopkins LLC and the SEC. IBM now has access to and has begun its review of 382 boxes of documents controlled by the SEC; and pending the completion of copying four (4) million or so documents and 23 privilege logs, recently received and reviewed by QSGI's counsel, IBM will possess all documents that were in McDonald Hopkins LLC's and the SEC's possession. [4] These millions upon millions of documents are responsive to IBM's First Request for Production and First Set of Interrogatories, constitute the known universe of existing documents pertaining to QSGI's bankrupt business, and were arduously compiled, organized and produced in the manner they were created, kept and maintained at a cost of some $250,000.00.

7. Despite the proven success of conducting litigation in a cooperative and courteous manner, IBM has abandoned this track and its local Florida counsel in favor of out-of-state attorneys, who are more concerned with creating litigation and collateral matters rather than bringing about their just and efficient end. As of March 21, 2012, IBM's local counsel has been non-communicative, despite having access to QSGI's counsel's contact information, including personal cell phone number. And while, IBM and its battalion of out-of-state counselors are prolific at papering the record, they are very ineffective communicators. In just under nine (9) months of litigation, not one of IBM's out-of-state attorneys have thought to engage in an actual

---

[4] QSGI's counsel received all of these records on approximately April 26, 2012. After an initial review, QSGI's counsel began copying these documents to an external flash drives on Thursday evening, May 3, 2012. As of Monday, May 7, 2012, these documents were still copying and will be shipped to IBM's counsel immediately upon completion.

conversation with any of QSGI's attorneys to discuss any substantive matters relating to this case, let alone anything of import.[5] Indeed, this dearth of conversation leads QSGI to believe IBM's out-of-state attorneys might not possess or know how to use a telephone.

8. IBM's sea of correspondence, sent upwards of four times a day, is a poor substitute for live conversation, made all the poorer by IBM's out-of-state's counsels' unreasonable and untenable demands that QSGI respond to the same within 24 hours "or else". This pattern of practice accomplishes little other than increase the amount and costs of litigation, and muddles and distorts the Court's record. Then again, this may be the entire purpose.

9. IBM knows that all QSGI's documents and records have been in the possession, custody, and control of a third parties. IBM has known this since December 2011, and it is the reason precipitating IBM's subpoena to McDonald Hopkins LLC—not QSGI's recalcitrance. IBM also knows, having been repeatedly advised by QSGI's counsel and McDonald Hopkins, that QSGI has had no control whatsoever over the timing of these third parties' production of QSGI's records. Rather than acknowledge these facts, IBM has discourteously taken to completely misrepresenting QSGI's conduct to the Court to unfairly seek punishment where no punishment is due.

WHEREFORE, for the reasons set forth herein, Plaintiff respectfully requests that this Court enter an Order Denying IBM's Motion to Compel Compliance with March 16, 2012 and for Sanctions for Noncompliance.

Respectfully submitted,

---

[5] In seven months, QSGI's counsel knows of only one telephone message left by out-of-state counsel to QSGI's counsel. This message was about scheduling a deposition and is unrelated to anything having to do with IBM's immediate Motion or QSGI's discovery responses.

                                        THE FERRARO LAW FIRM, P.A.
*Attorneys for the Plaintiff*
4000 Ponce de Leon Blvd.
Suite 700
Miami, FL 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222
Email: cxd@ferrarolaw.com

By:        /s/ Case A. Dam
      CASE A. DAM, ESQ.
      Florida Bar No. 756091

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on all counsel of record this 7th day of May 2012.

                                    THE FERRARO LAW FIRM, P.A.

                          By: /s/ Case A. Dam
                              CASE A. DAM, ESQ.
                              Florida Bar No. 756091