**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| QSGI, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 9:11-cv-80880-KLR |
| § | |
| IBM GLOBAL FINANCING and § | |
| INTERNATIONAL BUSINESS § | |
| MACHINES CORPORATION, § | |
| § | |
| *Defendants*. § | |

**IBM'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
COMPLIANCE WITH MARCH 16, 2012 ORDER AND FOR
SANCTIONS FOR NONCOMPLIANCE**

Pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure, International Business Machines Corporation and IBM Global Financing (collectively, "Defendants" or "IBM") submit this reply memorandum in support of their motion to: (1) compel QSGI to comply with the Court's March 16, 2012 order ("Order") to "completely respond to the pending discovery requests"; and (2) impose appropriate sanctions on QSGI for its failure to comply with that Order.

BACKGROUND

IBM's motion to compel compliance with the Order and for sanctions for noncompliance ("Motion") addresses QSGI's ongoing failure to comply with the Court's Order. In its opposition to the Motion ("Response"), QSGI admits that it has not complied with the Order. QSGI contends, wrongly, that its failure to comply is "not its fault and is excusable". QSGI also contends, again wrongly, that its production of several million documents will discharge its obligations to produce documents responsive to IBM's discovery requests. QSGI does not even *address* its failure to provide substantive responses to IBM's first set of interrogatories ("Interrogatories") seeking the basic factual premises of QSGI's purported

claims. And QSGI admits that over a month since the Court's deadline for the production of documents, it still has not yet completed its production—indeed, having only produced a mere fraction of its intended production. QSGI offers no legitimate excuse for its failure to comply with the Court's Order. The several million documents that QSGI plans belatedly to produce have at all relevant times been in QSGI's possession (in the hands of its SEC counsel). Moreover, QSGI's stated plan to dump these documents on IBM (without responsiveness review and in noncompliant format) is neither a valid written response to IBM's Interrogatories, nor does it discharge QSGI's obligations pursuant to the Court's Order to produce documents responsive to IBM's Document Requests (collectively, "Discovery Requests"). QSGI's failure to respond completely to the Interrogatories or complete its document production substantially prejudices IBM's ability to prepare its defense. QSGI brought this suit, and it must meet its discovery obligations and comply with this Court's Order. Given upcoming depositions in May and the looming close of fact and expert discovery (July 27, 2012), IBM respectfully requests that this Court compel QSGI to comply with the Court's Order within a week of the Court's order on this Motion and impose appropriate sanctions on QSGI.

## ARGUMENT

### A. QSGI Concedes its Noncompliance.

QSGI does not dispute its ongoing violation of the Order—over a month and counting after the deadline for QSGI to respond completely to outstanding discovery. QSGI's Response omits even to address its failure to provide responses to IBM's Interrogatories. And QSGI readily admits that it has yet to produce the overwhelming majority of its intended document production ("millions upon millions of documents", according to QSGI, *see* Resp. ¶ 6).

QSGI's uncontested and continuing failure to comply with the Court's Order to provide

complete responses to IBM's Interrogatories alone warrants sanctions.[1] Through these Interrogatories, IBM seeks answers to straightforward questions concerning fundamental aspects of QSGI's case.[2] IBM is entitled to clear and complete answers. Over five months after IBM propounded its Interrogatories, IBM has yet to receive a substantive answer to *any* of its Interrogatories.[3] Moreover, based on QSGI's Response, it appears that QSGI does not intend ever to provide responses to the Interrogatories. If QSGI cannot, for example, state the basis for its central allegation that IBM purportedly changed a policy in the summer of 2007 and applied that policy in disparate fashion, or identify any facts relating to the impact of that purported policy change, QSGI should not be permitted to continue this lawsuit against IBM. *See, e.g.*, *Maus v. Ennis*, No. 6:10-cv-1904-Orl-31DAB, 2011 WL 6319176, at *3-8 (M.D. Fla. Dec. 1, 2011) *adopted by* No. 6:10-cv-1904-Orl-31DAB, 2011 WL 6319179 (M.D. Fla. Dec. 16, 2011)

---

[1] QSGI incorrectly disparages IBM's good-faith certification, claiming that IBM did not seek to resolve the discovery issues prior to filing this Motion. Resp. ¶¶ 2-3. The chronology of facts in IBM's Motion, none of which QSGI disputes, demonstrates IBM's extensive good-faith efforts to engage QSGI prior to filing this Motion. Specifically, IBM called QSGI on April 19, 2012 to discuss QSGI's noncompliance with the Order, but QSGI did not return IBM's phone call. Mot., p. 10. IBM's correspondence and request for conference also went unanswered, including correspondence on March 31, 2012 (outlining the deficiencies in QSGI's March 30, 2012 production and providing details as to how to remedy); April 2, 2012 (requesting that QSGI specify whether it had provided complete written responses to IBM's Document Requests); April 2, 2012 (requesting access to the boxes of documents produced to the SEC); April 11, 2012 (requesting complete responses to IBM's Discovery Requests, confirmation on whether QSGI has completed its document production, information regarding QSGI's noncompliant production and access to the documents produced to the SEC); and April 23, 2012 (requesting a meet and confer concerning QSGI's noncompliance with the Order). *Id.* at pp. 9-10.

[2] For example, IBM's Interrogatories request information regarding the factual bases of QSGI's allegation that IBM changed a policy in 2007 and applied that policy in disparate fashion (Interrog. No. 1), and the impact of that purported policy change (Interrog. Nos. 2-6).

[3] QSGI initially provided a partial substantive response to one Interrogatory—Interrogatory No. 8—concerning document destruction and retention. Subsequent to IBM filing its Motion, however, QSGI's designated corporate representative on those issues testified that QSGI's response describing QSGI's electronic retention practices was inaccurate and did not "describe anything [QSGI] did". *See* May 7, 2012 Rule 30(b)(6) deposition of David Harris ("Harris Deposition"), May 11, 2012 Diessel Decl. Ex. 1, at 95:5-24. This line of questioning prompted QSGI's counsel effectively to withdraw that response, on the purported basis that the interrogatory response is unverified and "still hasn't been resolved". *Id.* at 88:7-11. Per the Court's Order, this response should have been "resolved" and complete responses provided by April 2, 2012.

(entering default judgment against the defendant following noncompliance with the court's order requiring responses to document requests and answers to interrogatories).

Furthermore, QSGI not only admits, but touts, its noncompliance with the Court's Order to complete production of documents by April 2, 2012. By April 2, QSGI had produced a mere fraction of its intended production (some tens of thousands of documents, produced in noncompliant format precluding orderly review). (*See* Mot., pp. 6-9; May 11, 2012 Declaration of Benjamin Diessel ("May 11, 2012 Diessel Decl."), ¶ 6.) QSGI's forthcoming production, which will come over a month after the Court's deadline, apparently will comprise several million documents. (May 11, 2012 Diessel Decl. ¶ 9.)[4] Surely QSGI's counsel knew prior to April 2, 2012 that it had several million documents of outstanding document production. No doubt QSGI's counsel knew that at least prior to the date of its Response. Yet QSGI never sought leave from the Court for an extension of time for this document production. Nor did QSGI inform IBM prior to the date of its Response that QSGI's document production was incomplete, much less that it would be producing "millions upon millions of documents". (*Id.*)[5] Accordingly, sanctions are appropriate. *See, e.g.*, *Siddiq v. Saudi Arabian Airlines Corp.*,

---

[4] On the date of this submission, IBM received a hard drive that QSGI describes as containing materials that McDonald Hopkins previously produced to the SEC. As of the time of this submission, IBM has not had an opportunity to determine the contents of the hard drive. QSGI has not made any other document production as of the date of this submission since its April 5, 2012, document production. Given QSGI's representation that it is producing the known universe of existing documents, and that QSGI has not indicated that this hard drive completes its intended production of the known universe of QSGI documents, IBM anticipates that a large volume of additional QSGI documents are yet to be produced. May 11, 2012 Diessel Decl. ¶ 11.

[5] QSGI mischaracterizes IBM's communication with QSGI as a "sea of correspondence" purportedly the result of IBM's unwillingness or inability to communicate via telephone. Resp. ¶¶ 7-8. Throughout this litigation, IBM has sought to communicate with QSGI through formal telephonic conference, telephone conversation, and email and letter correspondence. May 11, 2012 Diessel Decl. ¶ 4. Around February of 2012, however, QSGI stopped returning IBM's phone calls. For example, QSGI failed to respond to multiple phone calls made by IBM in an effort to resolve outside of court QSGI's failure to provide IBM with discovery. *See* Mot. to Compel Pl.'s Resps. to Defs.' Disc. Reqs. and Mem. of Law in Supp. of Defs.' Mot., Besvinick Decl. ¶ 16 (Feb. 15, 2012, ECF No. 40-1). More recently, QSGI failed to return a phone call made by IBM in an effort to resolve outside of court QSGI's noncompliance with the Order.

No. 6:11-cv-69-Orl-19GJK, 2012 WL 390496, at *3-4 (M.D. Fla. Feb. 1, 2012) (finding that "[a]n award of sanctions [was] appropriate due to Defendant's failure to comply with the Court's order [to serve responsive documents] or to seek an extension of time to comply").[6]

B.  QSGI's Self-Inflicted Difficulties Do Not Excuse its Noncompliance.

QSGI contends that its noncompliance with the Court's Order "was not QSGI's fault and is excusable". (Resp. ¶ 2.) Specifically, QSGI points to its failure to preserve certain QSGI documents before providing them to the SEC and, incredibly, claims that only recently did it learn that other of "QSGI's documents and records have been in the possession and control of . . . QSGI's SEC counsel, McDonald Hopkins LLC". (*Id.*) QSGI offered identical excuses in opposing IBM's initial motion to compel, which the Court did not credit.[7] These excuses are equally unavailing here.

QSGI's representation that its documents were in the possession of QSGI's SEC counsel is irrelevant and misleading. Documents in the possession of QSGI's SEC counsel are within QSGI's possession, custody and control for purposes of the instant lawsuit. *Jans v. The GAP Stores, Inc.*, No. 6:05-cv-1534-Orl-31JGG, 2006 WL 2691800, at *1-2 (M.D. Fla. Sept. 20, 2006) (ordering documents within the possession of a party's counsel produced because those

---

*See* Mot., Declaration of Benjamin Diessel ("May 1, 2012 Diessel Decl."), ¶ 17 (May 1, 2012, ECF No. 64-2). Rather than cut off communication (as QSGI may have preferred), IBM resorted to communication via correspondence (which also went unanswered). May 11, 2012 Diessel Decl. ¶ 4.

[6] QSGI's reliance on *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858 (5th Cir. 1970) is entirely misplaced. The Eleventh Circuit has made clear that sanctions may be imposed for non-compliance with a court order even "without a showing of willfulness or bad faith on the part of the disobedient party". *See BankAtlantic v. Blythe Eastman Paine Webber Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994). Moreover, unlike the plaintiff in *Dorsey*, QSGI possessed these several million documents at all relevant times.

[7] There, QSGI contended that "unexpected circumstances" should excuse its interminable delays in providing discovery, and similarly pointed to its failure to preserve the SEC documents and that "QSGI's documents were in the possession, custody and control of QSGI's counsel, McDonald Hopkins, LLC". *See* Pl.'s Resp. to Defs.' Mot. to Compel Resps. to Defs.' Disc. Reqs. ¶¶ 1, 4 (Mar. 2, 2012, ECF No. 43).

documents are within the control of the party).  Moreover, QSGI misleadingly claims that it has been "at the mercy of McDonald Hopkins . . . who only recently produced and allowed access to the millions upon millions of documents".  (Resp. ¶ 2.)  Counsel was appointed by the Bankruptcy Court to bring this case well over a year ago.  Before filing suit—and at least shortly thereafter—counsel should have undertaken efforts to identify the various repositories of relevant QSGI documents and to ensure access to them.  Even a cursory investigation by counsel would undoubtedly have identified this obvious source of documents, which QSGI now acknowledges "constitute[s] the known universe of QSGI's existing documents".  (*Id.* ¶ 6.)  Indeed, these documents are conspicuous as one of the only sources of QSGI documents remaining following QSGI's document destruction.[8]  Further, there has been no suggestion by QSGI, let alone any evidence, that QSGI timely sought to collect and review the documents it possessed in the hands of McDonald Hopkins or that McDonald Hopkins was non-cooperative.  It should not have required time-consuming discovery by IBM of McDonald Hopkins, a motion to compel by IBM, and this Court's Order for QSGI to carry out its obligation to collect and produce its purported universe of existing documents.

With respect to QSGI's representation that certain QSGI documents were until recently in the possession of the SEC, this circumstance is due entirely to QSGI's improper failure to preserve these documents.  QSGI publicly stated in 2007 that it had an "actionable" claim against IBM.  (*See* QSGI, Inc., Current Report (Form 8-K) (Nov. 14, 2007), Ex. 99.1, Reply in Supp. of Mot. to Compel Pl.'s Resps. to Defs.' Disc. Reqs., Besvinick Decl. Ex. A (Mar. 12, 2012 ECF No. 44-1).)  It was incumbent upon QSGI at that time to preserve and retain any

---

[8] March 12, 2012 Rule 30(b)(6) Deposition of Marc Sherman ("Sherman Deposition"), May 11, 2012 Diessel Decl. Ex. 2, at 169:18-23 ("Q.  So other than these documents that you selected and sent to Mr. Bauta, is it true that QSGI does not have any documents other than those in the possession of McDonald Hopkins . . .  A.  That would be correct.").

6

documents relevant to that purported claim (including the vast quantity of other documents that QSGI lost and destroyed).[9] QSGI should not have turned over to the SEC original documents bearing on a lawsuit that it already anticipated or, at minimum, QSGI should have made copies of the documents prior to turning them over to the SEC. Having turned over relevant original documents, at least QSGI should have endeavored timely to obtain their return, but QSGI provides no evidence of its diligence on that score.

Compounding IBM's prejudice, as of the date of this submission, IBM still does not have meaningful access to these documents. On May 4, 2012, IBM was allowed to peruse the documents in the warehouse in which the boxes are stored. (May 11, 2012 Diessel Decl. ¶¶ 7-8.) But QSGI refuses to allow IBM to arrange for a third-party copying service to copy these documents off-site (which would be far more efficient and less costly than trying to bring copying machines and personnel to QSGI's warehouse). (*Id*. ¶ 10.) QSGI claims that it has an agreement with the SEC that precludes copying of documents at a vendor's location. (*Id*.)

---

[9] QSGI's suggestion that only a narrow subset of documents was destroyed is wholly incorrect. For example, the documents that QSGI stored in Minnesota comprised a large quantity of documents highly relevant to this lawsuit. *See* Sherman Deposition, May 11, 2012 Diessel Decl. Ex. 2, at 62:8-63:22 ("Q. [I]nformation relating to QSGI's resale of used mainframes would have been retained . . . at the Minnesota facility, correct? A. Yes. Q. Information relating to QSGI's . . . prospective sale of used mainframes would have been stored . . . in the Minnesota facility? A. Correct. Q. And information relating to QSGI's inventory of used IBM mainframes would have been stored . . . in QSGI's Minnesota facility, correct? A. Correct . . . Q. So documents relating to QSGI's strategy concerning its used mainframe business would have been stored . . . in its Minnesota facility, correct? . . . A. Primarily, yes."); 87:8-10 ("A. The Minnesota hard copy documents were destroyed sometime in 2009 . . . ."). Moreover, QSGI destroyed or lost a vast quantity of additional documents during its bankruptcy, when its CEO, Marc Sherman, was supposedly in charge of document retention. *See id.* at 137:2-4 ("Q. So you and Mr. Meynarez were running QSGI's document retention during this bankruptcy, correct? A. To the best that we could."); 158:17-20 ("Q. So for purposes of this lawsuit, QSGI has no hard copy documents at all, correct? . . . A. Correct."); 109:22-110:1 ("Q. So as far as this lawsuit is concerned, the books, records, and documents relating to QSGI's hardware division are gone, right? . . . A. Correct."); 104:4-7 ("Q. So for purposes of this lawsuit, whatever was on those servers is gone? . . . A. Yes.").

QSGI has refused to show IBM this purported agreement. (*Id.*)[10] IBM's understanding based on conversations with the SEC, however, is that QSGI is not restricted in providing these documents to a third-party vendor for that vendor to make copies for purposes of this litigation. (May 10, 2012 Declaration of Ty Cobb, ¶ 2-4.) QSGI's restrictions on these documents effectively forecloses IBM's ability to use these documents for purposes of this litigation. (May 11, 2012 Diessel Decl. ¶ 10.)

### C. QSGI's Belated Document Dump Does Not Meet its Obligations or Absolve its Prejudicial Noncompliance.

QSGI suggests that its forthcoming production of "millions upon millions of documents" fulfills its obligations pursuant to the Court's Order. (Resp. ¶ 6.) QSGI is incorrect. The Court ordered QSGI to respond completely to IBM's Interrogatories. The production of documents is a separate matter from, and would not satisfy, QSGI's obligation to respond completely to the Interrogatories in writing. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). Eight weeks have elapsed since the Court ordered QSGI to completely respond to the Interrogatories. To date, IBM has received effectively no responses at all. IBM should not be made to guess the substance of QSGI's purported claims.

Furthermore, QSGI's proposed belated production of several million documents is improper and does not discharge QSGI's court-ordered obligation to complete a production of *responsive* documents. IBM requested specific, narrowly targeted categories of documents, and QSGI was ordered to respond completely by April 2, 2012. QSGI, however, purports to respond to IBM's specific requests through its future production of the entire "known universe

---

[10] QSGI suggested that IBM obtain written agreement from the SEC that these documents may be copied offsite. May 11, 2012 Diessel Decl. ¶ 10. As far as IBM can tell, however, QSGI has not approached the SEC to obtain such permission. *Id.* Nor has QSGI responded to IBM's request that QSGI copy selected documents and provide them to IBM. *Id.*

8

of QSGI's existing documents", *see* Resp. ¶ 6, without any review for responsiveness to IBM's Document Requests.[11]  QSGI cannot dump these documents on IBM in the 11th hour of fact discovery without review.  QSGI has already effectively (and improperly) outsourced to IBM preparation of QSGI's document productions through its admitted noncompliant productions of electronic documents.  QSGI would now effectively outsource the review of its entire universe of documents for material responsive to IBM's specific requests, too.  IBM should not bear the burden of both defending and prosecuting this matter.  QSGI brought this case and these discovery obligations are its to bear if it intends to pursue this case.  *See, e.g.*, *Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997) (affirming the imposition of sanctions where plaintiff "rebuffed his obligation to sort through the documents and produce only those responsive to [defendant's] request").  QSGI should be ordered to review these documents for responsiveness to IBM's Document Requests and to produce these documents in the agreed format that can efficiently be reviewed by IBM.[12]

Even assuming that QSGI's promised production of documents fulfilled QSGI's obligations pursuant to the Order (which it does not), that would not absolve QSGI's material

---

[11] QSGI's counsel informed IBM's counsel shortly before QSGI submitted its Response that QSGI intended to reproduce these materials as provided by McDonald Hopkins without conducting a review for responsiveness to IBM's Document Requests. May 11, 2012 Diessel Decl. ¶ 9. Indeed, during the deposition of QSGI's corporate representative on document retention issues, counsel nonchalantly dismissed the prohibitive cost and prejudice QSGI will impose on IBM when this occurs by stating that he expects IBM to "have a team of 40 attorneys" to "comb[] through" "every single document that QSGI has ever generated". *See* Harris Deposition, May 11, 2012 Diessel Decl. Ex. 1, at 161:13-19.

[12] QSGI attempts to shirk its obligations pursuant to the parties' agreement relating to electronic production of documents by characterizing its agreement as "gratuitous". *See* Resp. ¶ 4. This *post hoc* characterization does not alleviate QSGI of its obligations; nor does it change the fact that QSGI agreed to these terms and is bound by the parties' agreement. IBM has produced a large volume of documents in response to QSGI's document requests, and has complied with the parties' agreement by meticulously preparing document productions that include load files, metadata, and individual pages with Bates numbers. May 11, 2012 Diessel Decl. ¶ 5. IBM has been prejudiced by QSGI's refusal to provide electronic productions in the agreed on format necessary for orderly review. May 1, 2012 Diessel Decl. ¶ 14. If QSGI again fails to provide the necessary load files to load and review the massive forthcoming production, the cost to IBM to remediate this issue will be substantial. May 11, 2012 Diessel Decl. ¶ 9.

noncompliance with the Court's Order. QSGI's noncompliance, over a month in duration to date, substantially and unfairly prejudices IBM in preparation of its defense and undermines the integrity of the discovery process. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process."). Fact depositions are presently scheduled throughout May, with depositions likely continuing into June, and the discovery phase (including expert discovery) is set to close less than three months from now (July 27, 2012). Yet as of the date of this submission, IBM's discovery from QSGI has barely even begun. With QSGI's destruction of relevant documents and planned deluge of irrelevant material, the prejudice to IBM in preparing its defense is significant. QSGI's conduct has already caused IBM to incur sizeable expenses, for example by forcing IBM to engage a litigation services vendor to recreate technical files necessary to load and review QSGI's electronic document production. (*See* Mot., p. 8.) Accordingly, appropriate sanctions are warranted.

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court order QSGI to comply with the Court's prior Order within one week of the date of the Court's order on the instant Motion, order that QSGI's forthcoming electronic document production be reviewed for responsiveness to IBM's Document Requests and produced in the agreed, compliant format, and impose sanctions upon QSGI for its noncompliance.

Dated:  May 11, 2012

Respectfully submitted,

/s/ Laura Besvinick_____
Laura Besvinick
Florida Bar No. 391158
HOGAN LOVELLS US LLP
200 South Biscayne Blvd.
Suite 400
Miami, FL 33131
Telephone:  305-459-6500
Facsimile:  305-459-6550
Laura.Besvinick@HoganLovells.com
Evan R. Chesler*
Richard J. Stark*
Teena-Ann V. Sankoorikal*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  212-474-1000
Facsimile:  212-474-3700
echesler@cravath.com
rstark@cravath.com
tsankoorikal@cravath.com

Ty Cobb*
Eric J. Stock*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone:  202-637-5600
Facsimile:  202-637-5910
Ty.Cobb@HoganLovells.com
Eric.Stock@HoganLovells.com
*Admitted Pro Hac Vice*

*Counsel for Defendants IBM Global Financing and International Business Machines Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 11th day of May 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Laura Besvinick_____
Laura Besvinick
Florida Bar No. 391158

## QSGI, INC. SERVICE LIST

Juan Pablo Bauta, II
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222

Case A. Dam
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222
Email: cxd@ferrarolaw.com