UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| QSGI, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 9:11-cv-80880-KLR |
| IBM GLOBAL FINANCING and INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § § § | |
| Defendants. | § | |

**DECLARATION OF BENJAMIN H. DIESSEL**

Benjamin H. Diessel, declares as follows:

1. I am an attorney at the law firm of Cravath, Swaine & Moore LLP and counsel to Defendants IBM Global Financing and International Business Machines Corporation (collectively, "Defendants" or "IBM") in the above-captioned action. I submit this declaration in support of IBM's Reply in Support of its Motion to Compel Compliance With March 16, 2012 Order and For Sanctions For Noncompliance.

2. Attached as Exhibit 1 is a true and correct copy of excerpts from the transcript of the May 7, 2012 Rule 30(b)(6) deposition of David Harris.

3. Attached as Exhibit 2 is a true and correct copy of excerpts from the transcript of the March 12, 2012 Rule 30(b)(6) deposition of Marc Sherman.

4. IBM has sought, on numerous prior occasions, to engage QSGI concerning its noncompliance with the Court's Order. Yet, IBM's letters and phone calls regarding the same went unanswered. Indeed, IBM has sought throughout this litigation to communicate with QSGI by all available means, including telephonic conference, telephone conversation and email and letter correspondence. When QSGI stopped

returning IBM's phone calls around February of 2012, IBM resorted to communication via email and letter correspondence (which also went unanswered).

5. On April 11, April 18, April 27 and May 7, 2012, IBM provided electronic document productions to QSGI. These productions comprise a substantial volume of documents. IBM complied with its agreed-to obligations with respect to the production of electronic documents by meticulously preparing these document productions to include load files, metadata and individual pages with Bates numbers.

6. On March 30, April 3, and April 5, 2012, QSGI provided electronic document productions to IBM. These productions comprise some tens of thousands of documents which were produced in a noncompliant format precluding orderly review.

7. On May 2, 2012, QSGI wrote to IBM, stating that the documents QSGI previously turned over to the SEC had been returned, and that IBM could inspect these documents at the warehouse where they are stored.

8. On May 4, 2012, QSGI permitted IBM to peruse these documents at the warehouse.

9. On May 7, 2012, I took the continued deposition of QSGI's corporate representative for document retention issues, David Harris. At the conclusion of that deposition (and just hours before QSGI filed its response to the present motion), QSGI's counsel represented to me that QSGI would be producing millions of documents in the next few days. This was the first time that QSGI informed IBM that it had not completed its document production as ordered by the Court. QSGI's counsel further represented that QSGI intended to produce these materials to IBM as provided by

McDonald Hopkins, without conducting a review for responsiveness to IBM's Document Requests, and without regard to QSGI's obligations pursuant to the parties' agreement concerning electronic productions of documents. If QSGI indeed produces these millions of documents in a noncompliant format, the cost to IBM to remediate the production will be substantial. Certainly the cost would exceed the tens of thousands of dollars expended by IBM to remediate QSGI's prior, and much smaller productions of electronic documents.

10. On May 7 and May 8, 2012, I spoke with QSGI's counsel concerning reasonable access to the documents that QSGI had previously turned over to the SEC. In those conversations, QSGI refused to permit a third-party vendor to copy these documents at the vendor's location, which would be more efficient and less costly than hiring a vendor to bring copying machines and personnel to QSGI's warehouse. QSGI's counsel stated that the basis for this refusal is a purported agreement between QSGI and the SEC. QSGI refused to provide IBM with a copy of this agreement. QSGI suggested that IBM obtain written agreement from the SEC allowing for these documents to be copied offsite. As far as IBM can tell, QSGI has not approached the SEC to obtain such permission. Nor has QSGI responded to IBM's request made in our letter dated May 8 that QSGI copy and provide to IBM selected documents. QSGI's restrictions on these documents, which preclude efficient copying of the documents, effectively forecloses IBM's ability to use these documents for purposes of this litigation.

11. On the date of this submission, IBM received a hard drive that QSGI describes in an accompanying letter as containing materials that McDonald Hopkins previously produced to the SEC. As of the time of this submission, IBM has

not had an opportunity to determine the contents of the hard drive. This production marks the only document production that QSGI has made to IBM since its April 5, 2012 document production. QSGI did not indicate in the letter accompanying this production whether this hard drive completes its intended production of the known universe of QSGI documents.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 11, 2012

Benjamin H. Diessel