UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 09:11-cv-80880-KLR

QSGI, Inc., a Delaware Corporation,

    Plaintiff,

v.

IBM GLOBAL FINANCING, a Division of
International Business Machines Corp., and
INTERNATIONAL BUSINESS MACHINES
CORP., Parent to and/or d/b/a IBM GLOBAL
FINANCING,

    Defendants.
_____/

**<u>PLAINTIFF'S RESPONSE TO IBM'S MOTION TO DISMISS WITH PREJUDICE
PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S MOTION</u>**

    Plaintiff, by and through undersigned counsel, hereby files this Response to Defendant, IBM's MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION. In support of denying IBM's Motion, Plaintiff states the following:

    1.    Despite IBM's efforts to draw the Court's attention away from its destruction of a vulnerable, once competitive market by lobbing unfounded accusations of deceit, spoliation and underhandedness by the victim, QSGI, this Court's review is nonetheless limited to the four corners of QSGI's Second Amended Complaint and nothing more. *See, St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). IBM's Motion to Dismiss tests the sufficiency of QSGI's allegations and not the merits of QSGI's underlying lawsuit. This Court must accept as true all the allegations in the QSGI's Second Amended Complaint and construe them in the light

most favorable to QSGI. *Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir.2004); *Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065 (2004); *Nussbaum v. Mortgage Service America Co.*, 913 F. Supp. 1548, 1553 (S.D. Fla. 1995). This Court must also favor QSGI with all reasonable inferences from the allegations in the Second Amended Complaint. *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir.1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

2. QSGI is not required to prove its case against IBM at this stage. Rather it is IBM's burden to demonstrate beyond a reasonable doubt that QSGI's claims are implausible. *See*, *Hap v. Toll Jupiter Ltd. P'ship*, 2009 WL 187938 at 9 (S.D. Fla. 2009). IBM must demonstrate that QSGI can prove no set of facts in support of their claims entitling QSGI to the relief sought. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The test for measuring QSGI's pleadings is plausibility, and "asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Id.*

3. Moreover, the Eleventh Circuit has cautioned that, "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low, and Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases." *Spanish Broad. Sys. v. Clear Channel Commc'ns,* 376 F.3d 1065, 1070 (11th Cir.2004) (citations omitted). As explained in *Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), "summary

procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." (quoting *Norfolk Monument Co. v. Woodlawn Mem'l Gardens,* 394 U.S. 700, 704 (1969)).  Indeed, the Eleventh Circuit has plainly stated that pleading antitrust claims does not require the arduous, painstaking detail IBM demands of QSGI:

> Under the Federal Rules of Civil Procedure, the plaintiff is required in the complaint to make "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While courts had previously applied a heightened pleading requirement in antitrust cases, this view has subsequently been rejected in favor of applying Rule 8(a)'s notice pleading standard. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 995 (11th Cir.1983); *see Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065, 1077 (11th Cir.2004) (concluding that the "liberal pleading regime" outlined by Fed.R.Civ.P. 8(a)(2) applies to allegations of antitrust violations); *Covad Communications Co. v. BellSouth Corp.,* 299 F.3d 1272, 1279 (11th Cir.2002) (describing the threshold requirements for properly pleading an antitrust violation as "exceedingly low"), *vacated on other grounds by* 540 U.S. 1147, 124 S.Ct. 1143, 157 L.Ed.2d 1040 (2004). Accordingly,…"**dismissals** [on the pleadings] are particularly **disfavored** in **fact-intensive antitrust** cases." *Covad Communications Co.,* 299 F.3d at 1279.

*Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1234-1235 (11th Cir. 2005)

4.  It is through the above interpretive legal prism that this Court must weigh QSGI's standing to bring this lawsuit and whether enough is pled to put IBM on notice of its own, purposeful conduct and the damages resulting therefrom. QSGI's claims it has standing to prosecute the antitrust claims in this case. Indeed, based upon all the law relied upon by this Court and IBM, QSGI has the most standing to bring this claim. If, however, the Court has any doubts regarding QSGI's then as a matter of law no one in the world has standing to challenge IBM's monopolization of the entire secondary market for used IBM mainframe computers.

5. Antitrust standing "is not simply a search for an injury in fact, it involves an analysis of prudential considerations aimed at preserving the effective enforcement of the antitrust laws." *Todorov v. DCH Healthcare Auth.*, 9212 F.2d 1448 (11th Cir. 1991). Antitrust standing is best understood as the search for an appropriate consumer, competitor or other market participant to enforce antitrust laws. *Id*. Preferably a party whose injury is closely related to the alleged antitrust violation, (*See*, *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 748 F.2d 1486, 1493 (11th Cir. 1985)), which is established by Plaintiff pleading that its injuries suffered derive from some anticompetitive conduct and is the type the antitrust laws are intended to prevent. *Todorov*, 921 F.2d at 1450. By this measure there can be no better plaintiff to bring this lawsuit than QSGI.

6. The first step in establishing standing requires QSGI to plead that it has suffered an antitrust injury. An antitrust injury is defined as an:

> [I]njury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations...would be likely to cause."

*Todorov*, 921 F.2d at 1449.

7. QSGI must therefore show its injuries are within the sector of the economy threated by the breakdown of competition; that QSGI is a target of the anti-competitive practice; and that QSGI's injury was or is within this target, or "aim", of the Defendant, IBM. *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 748 F.2d at 1496. This limitation is essential because it "requires the private antitrust plaintiff to show that his own injury coincides with the public detriment tending to result from the alleged violation...increas[ing] the likelihood that public and private enforcement of the antitrust laws will further the same goal of increased competition. *Todorov*,

921 F.2d at 1449. The circumstances in which this is most apparent, and where a competitor-plaintiff will likely establish antitrust injury and hence stranding, include those like the immediate case where the competitor faces predatory or exclusionary conduct. *See*, ABA SECTION OF ANTITRUST LAW, PROVING ANTITRUST DAMAGES: LEGAL AND ECONOMIC ISSUES (2D ED. 2010), p. 27; *See also¸ Gulf States Reorganization Group v. Nucor Corp.*, 466 F.3d 961, 967-68 (11th Cir. 2006)(finding plaintiff-competitors' injury in being excluded from the relevant market was inseparable from the alleged harm to competition).

8. The second, third and fourth steps in establishing antitrust standing, require QSGI to show it is an efficient enforcer of the antitrust laws; demonstrate the non-speculative nature of its damages; and show that denying a remedy would likely leave a significant antitrust violation undetected and unremedied. *Todorov*, 921 F.2d at 1451. An efficient enforcer is a party directly injured by the alleged anticompetitive behavior. This excludes persons whose injuries are too remote nor the type of loss which a violation of antitrust law would likely cause; and includes identifiable classes, groups, persons or companies whose self-interest motivates them to vindicate the public interest in antitrust enforcement. *See*, *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1496 (11th Cir. 1985); *See also, Todorov*, 921 S.2d at 1450. Here QSGI's interests are perfectly aligned with the public in that its very existence owed itself to acquiring, selling and installing IBM's mainframes at a lower price and with better service than IBM and others. QSGI's damages are very real, demonstrable, and not of the fleeting hypothetical kind disdained by the Eleventh Circuit in *Todorov, Amey and Spanish Broadcasting*. Lastly, there is no real possibility that QSGI's damages are more properly attributed to a less remotely injured party, or that awarding QSGI antitrust damages will lead to duplicative recovery, thus fostering inefficient enforcement of the antitrust laws. *Todorov*, 921 S.2d at 1451. Put simply, there is no

other party more closely injured by IBM completely monopolizing the used mainframe market or to such a degree than QSGI.

9. QSGI operated in the small, vulnerable and already monopolized market for used IBM mainframe computers. At the time of the alleged injury IBM controlled 90% of the used mainframe market through its business division IBM Global Financing ("IGF")—a direct competitor of QSGI, Mainframe Services, Top Gun Technology, Atlantix Global, Great Lakes Computer, and others. QSGI, its competitors and its customers operated and conducted business within this 10% of the market. At all times, QSGI and its competitors' prices for locating, selling and installing these used mainframes were competitive and the very reason for their continuing existence. Vital to this secondary market and QSGI's existence was used-IBM-mainframes purchasers' ability to modify the capacity of the used mainframe upon installation. Before implementing its six (6) month rule, IBM charged a reasonable fee to make these modifications for purchasers of used IBM mainframes. After implementation of its 6 month rule, IBM refused to make these modifications for 6 months unless the customer purchased the used IBM mainframe from its own division IGF. IBM's policy change eviscerated any cost and price savings from purchasing used IBM mainframes from QSGI or its competitors, broke down competition and eventually destroyed a competitive market for used IBM mainframes. This tying arrangement specifically targeted the used IBM mainframe market; has driven most if not all competition out of this market; and is an illegal, per se antitrust violation which sought to make QSGI a victim. *See*, *Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451, 463 (1992)("a tying arrangement is an agreement by a party to sell one product but only the condition that the buyer also purchases a different, tied product.")

10. QSGI has standing to bring this claim as it undeniably suffered an antitrust injury directly caused by IBM's exclusionary conduct. QSGI has also sufficiently pled the same pursuant to the Court's Order dismissing QSGI's first complaint. Even if this Court finds QSGI's bankruptcy, damages and resulting lack of competition is insufficiently pled, QSGI's case should be allowed to proceed given the presumed potential for anticompetitive effects resulting from IBM's unquestioned domination of the new and used mainframe markets. Before IBM implemented its 6 month rule, QSGI was a vibrant, growing company operating in an energetic, competitive market. QSGI's downfall and bankruptcy and IBM's swallowing whole the used IBM mainframe market is a direct result and consequence of IBM's 6 month, tying arrangement. That QSGI shares an interest with consumers and former competitors of used IBM mainframes is manifestly obvious. IBM controls every facet of its used mainframes and does so at the expense of consumers who have virtually no other options, and competition, which cannot exist without entrepreneurial opportunity. Most importantly, if this Court does not find QSGI has standing, thus precluding QSGI from prosecuting its antitrust claims against IBM, then it is clear that no party has standing, and it is certain that IBM's antitrust violations will go undeterred and unpunished.

11. For all the reasons set forth above, QSGI's FDUPTA claims should be allowed to proceed too, as they are dependent upon a finding that QSGI's unfairly monopolized the market for used IBM mainframes thus driving QSGI out of business. Per the Court's Order of dismissal of the first complaint, and pursuant to Florida law, QSGI has also specifically pled the actual damages it suffered as a consequence of IBM's unfair business practices; namely, its worthless inventory and the degradation of its business ultimately concluding in its bankruptcy. Having made these allegations, QSGI has sufficient pled a cause of action under FDUPTA.

WHEREFORE, for the reasons set forth herein, Plaintiff respectfully requests that this Court enter an Order Denying IBM's MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION.

Respectfully submitted,

THE FERRARO LAW FIRM, P.A.
*Attorneys for the Plaintiff*
4000 Ponce de Leon Blvd.
Suite 700
Miami, FL 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222
Email: cxd@ferrarolaw.com

By:    /s/ Case A. Dam
CASE A. DAM, ESQ.
Florida Bar No. 756091

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on all counsel of record this 11th day of May 2012.

                                              THE FERRARO LAW FIRM, P.A.

                                By: /s/ Case A. Dam
                                      CASE A. DAM, ESQ.
                                      Florida Bar No. 756091