UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| QSGI, INC., § § *Plaintiff*, § § v. § § IBM GLOBAL FINANCING and § INTERNATIONAL BUSINESS § MACHINES CORPORATION, § § *Defendants*. § | Case No. 9:11-cv-80880-KLR |

# IBM'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, International Business Machines Corporation and IBM Global Financing (collectively, "Defendants" or "IBM") submit this Reply in support of their motion to dismiss with prejudice the Second Amended Complaint filed by plaintiff QSGI, Inc. ("QSGI") on March 28, 2012.

## BACKGROUND

IBM's Motion to Dismiss With Prejudice Plaintiff's Second Amended Complaint ("Motion") highlights three fatal deficiencies in QSGI's pleading of antitrust injury. QSGI's opposition to the Motion ("Opposition") fails to address any of them. Specifically:

- No change in market share.  QSGI fails to address the fact that its complaint alleges that IBM's market share remained the same after the purported adoption of the six-month rule as it was before—meaning that there was no change in the amount of competition and therefore no harm to competition.

- No harm to competitors.  QSGI does not contest the fact that its complaint fails to allege any injury to any competitors (other than QSGI itself), further confirming the lack of any alleged harm to competition.

- No harm to customers.  QSGI does not dispute the fact that its complaint fails to allege any cognizable injury to customers.  Consumer harm, the ultimate concern of antitrust law, is thus absent from this case.

QSGI thus concedes all three points. Having alleged no market (*i.e.*, public) harm, QSGI has failed to allege that IBM caused any anticompetitive effect. Thus, whatever injury

QSGI might claim, it is not an antitrust injury. Put another way, QSGI has alleged only harm to itself, and an injury to an individual firm is not antitrust injury. QSGI has conceded all of this, and those concessions compel dismissal of the Second Amended Complaint.

At bottom, QSGI simply argues that it went bankrupt, and so was injured. QSGI contends that it need do nothing more and that the burden rests on IBM to demonstrate that QSGI can prove no set of facts that would support its claims. But this is not the law. Under the correct legal standard, QSGI must plausibly allege each and every element of its claims, including antitrust injury. This QSGI has failed to do, and so its complaint should be dismissed.

Moreover, IBM seeks dismissal with prejudice because offering QSGI another opportunity to fix its pleading is unwarranted and would be futile. QSGI neither requests another opportunity to replead nor disputes the futility of such an opportunity. Thus, again, QSGI has effectively conceded the point. IBM's motion to dismiss should be granted, and it should be granted with prejudice.

## ARGUMENT

### A. QSGI Concedes Fatal Deficiencies in Pleading Antitrust Injury.

QSGI fails to address in its Opposition any of IBM's arguments. Those arguments are therefore conceded. *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood . . . that when a plaintiff files an opposition to a motion to dismiss, addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *see also Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1321 (N.D. Ala. 2008) (finding that a party's "failure to refute [an opposing party's] argument . . . is deemed a concession thereof").

First, IBM pointed out (Mot. at 8) that, according to the Second Amended Complaint, IBM's market share remained unchanged in spite of its purported adoption of the six-month

rule. (2d Am. Compl. ¶ 75 ("At all times material hereto IBM and IGF had . . . 90% market share."), ¶ 29 (IBM "commands approximately 90 percent of the market").) Thus, according to QSGI's pleading, IBM's alleged actions have not adversely impacted the amount of competition in the purported market. QSGI's Opposition is silent on this issue, leaving IBM's point uncontested.

Second, IBM argued (Mot. at 8-9) that QSGI did not allege any harm to other competitors of IBM. For example, QSGI failed to allege that any competitor of IBM (other than QSGI) went out of business, or even lost market share, as a result of the six-month rule. Combined with QSGI's allegations that IBM's share at all times remained the same, QSGI affirmatively alleged that competition remained unharmed after the institution of the six-month rule, negating any basis for antitrust injury. *See George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 139-40 (2d Cir. 1998). QSGI's Opposition fails to address these deficiencies at all.[1]

Third, IBM argued (Mot. at 9) that QSGI failed to allege any injury to customers. QSGI neither addresses this issue, nor mentions any purported harm to customers in its Opposition. QSGI's failure to plead injury to customers further demonstrates QSGI's failure to plead antitrust injury. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339-40 (11th Cir. 2010); *James Cape & Sons Co. v. PCC Constr. Co.*, No. 05-C-269, 2005 WL 2176965, at *2 (E.D. Wisc. Sept. 6, 2005); *see also Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992) (holding that there was no antitrust injury where plaintiff failed to demonstrate any harm to consumers).

---

[1] Relatedly, QSGI also leaves unaddressed its failure to make "allegations as to the structure" of its alleged worldwide market, including alleged competitors' shares in that market or the share absorbed by IBM. Mot. at n.17. This is a further basis for dismissal. *See George Haug Co.*, 148 F.3d at 140.

By failing to address these arguments, each of which is dispositive in IBM's favor, QSGI has conceded them all.[2] *See, e.g.*, *Hopkins*, 238 F. Supp. 2d at 178; *see also Silva v. U.S. Bancorp et al.*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (finding that plaintiff conceded to dismissal by failing to address defendant's arguments in plaintiff's opposition).

To establish antitrust standing, a plaintiff must plead antitrust injury. *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1448, 1449 (11th Cir. 1991); *QSGI, Inc. v. IBM Global Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *2 (S.D. Fla. Mar. 14, 2012). Antitrust injury is "injury of the type the antitrust laws were intended to prevent" and "should reflect the anticompetitive effect" of the alleged conduct. *Todorov*, 921 F.2d at 1449; *see also QSGI, Inc. v. IBM Global Fin.*, 2012 WL 1150402, at *2. Here, as QSGI has conceded, the alleged conduct caused no anticompetitive effect or injury to competition. QSGI has therefore failed to allege antitrust injury, and its complaint should be dismissed.

      B.      <u>QSGI's Pleading of Injury to Itself Is Not Antitrust Injury.</u>

QSGI pleads harm to its individual business, not antitrust injury. QSGI's Opposition acknowledges the absolute requirement of pleading antitrust injury, which requires a plaintiff "to show that his own injury coincides with the public detriment". *Todorov*, 921 F.2d at 1449. Yet QSGI's pleading does not allege any injury suffered by the market, as opposed to injury purportedly suffered by QSGI as an individual firm. In fact, QSGI's Opposition states that

---

[2] Rather than respond to IBM's arguments, QSGI attempts to characterize the six-month rule as a "tying arrangement". This does not solve QSGI's pleading problems for two reasons. First, QSGI's pleading does not mention a tying claim. Second, alleging tying does not dispense with the absolute requirement of pleading antitrust injury, which QSGI fails to do. *See, e.g.*, *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1125 (10th Cir. 2005) (affirming district court's dismissal of individual plaintiff's tying claim for failure to prove antitrust injury); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (holding that the antitrust injury requirement "is at least as great under the *per se* rule as under the rule of reason").

4

QSGI's business was *uniquely* impacted by IBM's six-month rule. (*See* Opp. ¶ 1 ("the victim, QSGI"), ¶ 4 ("QSGI has the most standing to bring this claim"), ¶ 8 ("[T]here is no other party more closely injured by IBM . . . or to such a degree than QSGI."), ¶ 9 ("antitrust violation which sought to make QSGI a victim"), ¶ 10 ("Before IBM implemented its 6 month rule, QSGI was a vibrant, growing company . . . ."). QSGI's claim of injury to its business is not sufficient to establish antitrust injury. *See Todorov*, 921 F.2d at 1449; *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1072-73, 1079 (11th Cir. 2004); *QSGI, Inc. v. IBM Global Fin.*, 2012 WL 1150402, at *2-4.

QSGI's statement of the crux of its argument is quite revealing. In essence, the argument relies on "QSGI's bankruptcy, damages and resulting lack of competition". (Opp. ¶ 10.) It continues to the effect that if the Court finds those allegations "insufficiently pled", it should nevertheless allow the case to go forward because of a "presumed potential for anticompetitive effects",[3] and because QSGI is the only party that could have standing to prosecute antitrust claims against IBM.[4] (*Id.* ¶ 10.)

This aptly illustrates why QSGI's complaint should be dismissed. For starters, QSGI's own bankruptcy and alleged damages are insufficient to establish antitrust injury, as noted above. And QSGI's complaint does not allege any "lack of competition". Instead, it

---

[3] Here, QSGI posits "IBM's unquestioned domination of the new and used mainframe markets". (Opp. ¶ 10.) IBM very much disputes any such asserted "domination", but that factual dispute is irrelevant to this motion. The relevant issue is whether QSGI has pled antitrust injury, and antitrust injury may not be presumed, even if one were to assume the presence of a monopoly.

[4] QSGI's contention that "[a]ntitrust standing is best understood as the search for an appropriate consumer, competitor or other market participant to enforce the antitrust laws" (Opp. ¶ 5) misses the mark. QSGI's comments in this regard (*id.* ¶¶ 5, 7-8) address the prudential, discretionary elements of antitrust standing. IBM's Motion, on the other hand, is addressed to the absolutely required element of antitrust injury. In the absence of an antitrust injury, questions of "appropriateness" do not even arise. *See Florida Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1375 (1997) ("Because we hold that Florida Seed has suffered no antitrust injury, we need not address whether Florida Seed would be an efficient enforcer of the antitrust laws as required by the second prong of our standing analysis.").

affirmatively states that there has been *no* reduction in competition. Further, IBM is aware of no authority, and QSGI cites none, for the notion that antitrust injury may be "presumed" on the theory that there could be "potential for anticompetitive effects". On the contrary, an antitrust plaintiff must plead that it suffered an actual antitrust injury. *Todorov*, 921 F.2d at 1449. Finally, QSGI's contention that it is the only party that could have antitrust standing establishes conclusively that QSGI is complaining about an alleged injury peculiar to itself and not reflective of a broader anticompetitive effect.

QSGI attempts to sweep the fatal flaws of its complaint under the rug by relying on *Conley v. Gibson*, 355 U.S. 41 (1957) and other pre-*Twombly* cases for the propositions that IBM must "demonstrate that QSGI can prove no set of facts in support of their claims entitling QSGI to the relief sought" and that the "Court must accept as true all the allegations" in QSGI's pleading. (Opp. ¶¶ 1-2.) This is simply not good law. The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), overruled *Conley*'s "no set of facts" pleading standard. *See ADA v. Cigna Corp.*, 605 F.3d 1283, 1288-89 (11th Cir. 2010) ("In *Twombly*, the Supreme Court 'retired' the 'no set of facts' pleading standard . . . that the Court had previously established in *Conley v. Gibson*.").[5] Moreover, conclusory allegations are "not entitled to be

---

[5] QSGI also incorrectly asserts that antitrust injury may be met by alleging that "its injuries are within the sector of the economy threatened by the breakdown of competition; that QSGI is a target of the anti-competitive practice; and that QSGI's injury was or is within this target, or 'aim', of IBM. (Opp. ¶ 7.) This so-called "target area" test is inapposite to the issue of antitrust injury. *See, e.g.*, *Florida Seed*, 105 F.3d at 1374 (stating that antitrust injury and efficient enforcement are separate elements of antitrust standing, the latter of which is predicated on the target area test). Moreover, whether the target area test is still valid even for assessing efficient enforcement is in serious doubt. *See Todorov*, 921 F.2d at 1450-51, n. 19 (noting that "[t]he Supreme Court specifically rejected the 'target area' test that had previously been used in this circuit").

assumed true" and may be disregarded by the Court. *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 681 (2009).[6]

These incorrect legal premises permeate QSGI's Opposition. Nowhere in its Opposition does QSGI so much as cite a single Eleventh Circuit case post-dating *Twombly*. Nor does QSGI defend the sufficiency of its allegations under the proper pleading standard. QSGI's allegations in regard to antitrust injury are conclusory, contradictory and altogether insufficient. They cannot save QSGI's antitrust claims under the *Twombly-Iqbal* standard. *See, e.g.*, *Jacobs*, 26 F.3d at 1339; *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 571-72 (6th Cir. 2009). Accordingly, QSGI's antitrust claim should be dismissed.

      C.  <u>QSGI's Dependent FDUTPA Claim Should Be Dismissed.</u>

QSGI admits that its FDUTPA claim is merely a repackaging of its monopolization claim. (Opp. ¶ 11 ("QSGI's FDUTPA claims . . . are dependent upon a finding that QSGI's [*sic*] unfairly monopolized the market for used IBM mainframes . . . .").) Because QSGI's antitrust claim must be dismissed, so too must QSGI's dependent FDUTPA claim. *See JES Props., Inc. v. USA Equestrian, Inc.*, No. 802-CV-1585T24, 2005 WL 1126665, at *19 (M.D. Fla. May 9, 2005); *QSGI, Inc. v. IBM Global Fin.*, 2012 WL 1150402, at *4. QSGI's failure to address IBM's argument that QSGI has not pleaded actual damages (because QSGI has not alleged delivery of used mainframes by IBM pursuant to contract) is a further basis for dismissal.

---

[6] QSGI also argues that dismissal is particularly disfavored in fact-intensive antitrust cases. *See* Opp. ¶ 3 (citing pre-*Twombly* cases). That antitrust cases may be fact-intensive, however, does not shield them from dismissal under Rule 12(b)(6) when the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face". *Twombly*, 550 U.S. at 570 (holding that antitrust case was properly dismissed for failing to satisfy this standard). QSGI's reliance on *Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 466 F.3d 961 (11th Cir. 2006), is also unavailing. *Gulf States* is readily distinguishable from the present case. *Gulf States* concerned a monopolist excluding a potential competitor from the relevant market by acquiring assets in violation of Section 7 of the Clayton Act. *Id.* at 966-68. It is well recognized that a potential competitor has antitrust standing in that particular situation, and the court so held in *Gulf States*. Such is not the situation here.

### D.     Dismissal With Prejudice Is Appropriate.

QSGI brought this action in August 2011 and still, less than three months from close of discovery, its pleading is facially insufficient. QSGI does not request another opportunity to replead its claim, and this Court need not grant one. *See In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 420 (2d Cir. 1994) (affirming district court's dismissal of second amended complaint without granting leave to replead where plaintiff did not request the opportunity to replead in opposing the motion to dismiss).

Indulging QSGI with another opportunity to plead its claims would be futile. QSGI made no efforts whatsoever to preserve relevant documents since the time that it anticipated a lawsuit with IBM in 2007. (Mot. at 3.) Indeed, QSGI has admitted to the destruction of documents in a storage facility in Minnesota in 2009. (*See* Pl.'s Resp. to IBM's Mot. to Compel Compliance With Mar. 16, 2012 Order and For Sanctions For Noncompliance ¶ 3 (May 7, 2012, ECF No. 70).) These documents, now destroyed, comprised a large quantity of the documents most relevant to this lawsuit.[7] QSGI destroyed or lost many other documents, too. (Mot. at 3.) As evidenced by QSGI's discovery responses, following the destruction and loss of these documents, QSGI now has no documents or information that it could use to establish legitimate bases for proper claims, much less to prove those claims. (*Id.* at 3-4, 15.)

---

[7] March 12, 2012 Rule 30(b)(6) Deposition of Marc Sherman, IBM's Reply in Supp. of its Mot. to Compel Compliance With Mar. 16, 2012 Order and For Sanctions For Noncompliance, Diessel Decl., Ex. 2 (May 11, 2012, ECF No. 77-1), at 62:8-63:22 ("Q. [I]nformation relating to QSGI's resale of used mainframes would have been retained . . . at the Minnesota facility, correct? A. Yes. Q. Information relating to QSGI's . . . prospective sale of used mainframes would have been stored . . . in the Minnesota facility? A. Correct. Q. And information relating to QSGI's inventory of used IBM mainframes would have been stored . . . in QSGI's Minnesota facility, correct? A. Correct . . . Q. So documents relating to QSGI's strategy concerning its used mainframe business would have been stored . . . in its Minnesota facility, correct? . . . A. Primarily, yes."); 87:8-10 ("A. The Minnesota hard copy documents were destroyed sometime in 2009 . . . .").

## CONCLUSION

For the foregoing reasons, IBM requests that this Court dismiss QSGI's Second Amended Complaint with prejudice.

Dated:  May 21, 2012

Respectfully submitted,

/s/ Laura Besvinick
Laura Besvinick
Florida Bar No. 391158
HOGAN LOVELLS US LLP
200 South Biscayne Blvd.
Suite 400
Miami, FL 33131
Telephone:  305-459-6500
Facsimile:  305-459-6550
Laura.Besvinick@HoganLovells.com

Evan R. Chesler*
Richard J. Stark*
Teena-Ann V. Sankoorikal*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  212-474-1000
Facsimile:  212-474-3700
echesler@cravath.com
rstark@cravath.com
tsankoorikal@cravath.com

Ty Cobb*
Eric J. Stock*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone:  202-637-5600
Facsimile:  202-637-5910
Ty.Cobb@HoganLovells.com
Eric.Stock@HoganLovells.com
*Admitted Pro Hac Vice

*Counsel for Defendants IBM Global Financing and International Business Machines Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 21st day of May 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ Laura Besvinick       
Laura Besvinick
Florida Bar No. 391158

## QSGI, INC. SERVICE LIST

Juan Pablo Bauta, II
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222

Case A. Dam
Ferraro Law Firm
4000 Ponce de Leon Blvd
Suite 700
Miami, FL 33146
Phone: 305-375-0111
Fax: 305-379-6222
Email: cxd@ferrarolaw.com