# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 09:11-CV 80880-KLR

QSGI, Inc., a Delaware Corporation,

      Plaintiff,

v.

IBM GLOBAL FINANCING, a Division of
International Business Machines Corp., and
INTERNATIONAL BUSINESS MACHINES
CORP., Parent to and/or d/b/a IBM GLOBAL
FINANCING,

      Defendants.

_____/

## PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SPECIFICATION OF COSTS

Plaintiff, QSGI, Inc., by and through its undersigned counsel, files its Objections to Defendants' Specification of Costs. In support thereof, Plaintiff states the following:

## INTRODUCTION

Despite their claim that $28,615.21 reflects their "reasonable" costs and expenses associated with the nonappearance of Plaintiff at a deposition, Defendants' Specification of Costs and Reasonable Expenses demonstrates a gross failure to exercise any billing judgment. According to Defendants, it required 4 attorneys and nearly 40 hours to draft and file a brief motion seeking sanctions for a party's failure to appear for a deposition, a most basic issue. Not only is the amount of time spent unreasonable, but the rates charged by Defendants' counsel are astonishingly high, ranging from $355 per hour for an attorney who has been licensed to practice law for less than 2 years to $1004 per hour for the most senior attorney on the case, and not even within the realm of possible hourly rates charged in South Florida, the prevailing legal market.

Moreover, the charges sought in filing for sanctions reflect an amount more than double the cost allegedly associated with the deposition. Defendants have failed to meet their burden of establishing that the exorbitant hourly rates their counsel charge was reasonable or that the number of hours expended on these filings was reasonable.

On June 18, 2012, the Court granted Defendant's Motion for Sanctions related to the deposition of Plaintiff's CEO, Marc Sherman. In its Order, the Court stated that Defendants were entitled to reimbursement of costs associated with Mr. Sherman's failure to appear at a May 8, 2012 deposition and for its expenses incurred in bringing the motion for sanctions. The Order also gave Defendants ten days to submit materials in support of their request for fees and costs.

Defendants filed their Specification of Costs and Reasonable Expenses Pursuant to Order Granting Defendants' Motion for Sanctions [D.E. #100] ("Specification of Costs"), on June 28, 2012. In the Specification for Costs, Defendants seek a total of $28,615.21 for Mr. Sherman's failure to attend a deposition. This amount includes $9,256.56 for expenses incurred as a result of the cancellation of the deposition, and an additional $19,358.65 for preparing the Motion for Sanctions.

As set forth more fully below, Plaintiff objects to the hourly rates for each of the 5 attorneys assigned to this matter, the hours expended by those attorneys, and the purportedly reasonable expenses incurred for the deposition.

2

## LAW AND ARGUMENT

I.      **The Attorneys' Fees Sought are Not Reasonable**

A.      **Standard for Calculating Attorney's Fees**

The Eleventh Circuit has adopted the lodestar method to determine a reasonable attorney's fee. *Norman v. The Housing Authority of the City of Montgomery*, 836 f.2d 1292 (11th Cir. 1988). The lodestar is calculated by multiplying the reasonable hourly rate times hours reasonably expended. *See id.* at 1302. The first step in computing the lodestar is for the Court to determine the reasonable hourly rate. *Id.* at 1299 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433) (1983)). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.*; *see Loranger v. Stierham*, 10 F.3d 776, 781 (11th Cir.).

Once the hourly rate is set, the next step in the computation is ascertaining the reasonable hours expended. *Id.* at 1301. This analysis focuses on excluding hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Id.* Finally, the court must consider the necessity of an adjustment. *Id.* "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the whole litigation." *Id.*

As discussed more fully below, Defendants have not established either that the rates their attorneys charge is the prevailing market rate in the relevant legal community or that the number of hours their counsel allegedly expended are reasonable. Plaintiff contends that the hourly rates billed are much too high for the relevant market and that the hours supposedly spent on drafting what was a simple motion and reply are not at all reasonable.

3

## B.    The Hourly Rates Charged are not Reflective of the Prevailing Market Rates

"The party seeking the fee bears the burden of producing satisfactory evidence that the

requested rate is in line with prevailing market rates. *Id.* In *Norman*, the Court discussed the

evidence needed to satisfy that burden:

> Satisfactory evidence at a minimum is more than the affidavit of the attorney performing
> the work.  It should also be noted that in line with the goal of obtaining objectivity,
> satisfactory evidence necessarily must speak to rates actually billed and paid in similar
> lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of
> market rate.  Evidence of rates may be adduced through direct evidence of charges by
> lawyers under similar circumstances or by opinion evidence.

*Id.* at 1299 (internal citations and quotation marks omitted); *see also Zokaites v. 3236 Ne 5th*

*Street, Inc.*, No. 07-60670, 2009 WL 259593, at * (S.D. Fla. Feb. 4, 2009) (holding attorney's

requested rate reasonable where evidence included affidavit of attorney in the community to

support rate).  Satisfactory evidence may also include citations to prior precedents showing

reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable

cases.

Moreover, the court itself is deemed an expert on the issue of hourly rate and may

properly consider "its own knowledge and experience concerning reasonable and proper fees and

may form an independent judgment either with or without the aid of witnesses as to value". *Id.*

at 1303.   The court also may look to the twelve factors set forth in *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).[1]  *Id.*; *see also Eugene v. 3Don & Partner*

---

[1] For many years, the Eleventh Circuit followed the Johnson facts in setting reasonable attorneys' fees.  In 1986,
however, the Supreme Court moved away from those facts and adopted the lodestar method. *Pennsylvania v.
Delaware Valley Citizens' Council*, 478 U.S. 546 (1986).  In *Norman*, the Eleventh Circuit adopted the lodestar
method, but reiterated that some of the Johnson factors still have utility in establishing hourly rate.  836 F.2d at
1299. The twelve factors are:  (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required
to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is
fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the results

4

*Estate Group, LLC*, No. 07-80439, 2009 WL 996016, at * (S.D. Fla. Apr. 14, 2009) (reducing the hourly rate from $400 to $300 based on *Johnson* factors, including time and labor required, novelty and difficulty of the questions, and the skill requisite to perform the legal service).

In the Declaration of Richard J. Stark filed as an exhibit to Defendants' Specification of Costs, Defendants list five different attorneys whose time allegedly is recoverable, and whose fees range from the astronomical price of $1004 per hour for Richard J. Stark, to a ridiculous $355 per hour for Evan C. Ennis, an attorney who has been out of law school for a mere two years. Despite having graduated from law school only three years ago, in 2009, Brian M. Jenks and Pawan Nelson still charge $474 an hour for their services, and finally, Benjamin H. Diessel, a 2008 law school graduate, charges an hourly rate of $613. According to Defendants, these rates are "reasonable and customary rates for lawyers with comparable experience at Cravath's peer law firms." Stark Dec., at p. 3.

As an initial matter, Defendants' "evidence" of its reasonably hourly rates is wholly insufficient. The declaration of Mr. Stark that the fee is "reasonable" does not even satisfy the minimum threshold of this Circuit. Moreover, while Mr. Stark states that the rates are in line with peer law firms, Defendants have produced no evidence that these rates are comparable to those within Southern Florida, the relevant market for purposes of determining hourly rates in this case. Accordingly, Defendants have fallen woefully short of satisfying their burden of establishing that their hourly rates are reasonable.

In addition, recent case law from this district establishes that these hourly rates are nowhere close to being comparable to the prevailing market rate. For example, in *Jet Pay, LLC*

---

obtained; (9) experience, reputation and ability of the attorneys; (1) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) the awards in similar cases. *Johnson,* 488 F.2d at 717-19.

5

*v. RJD Stores, LLC*, No. 11-60722-CIV, 2012 WL 280245 (S.D. Fla. Jan. 31, 2012), then-Magistrate Judge Robin S. Rosenbaum found an hourly rate of $300 was reasonable for an attorney who had been licensed since 1993, and that $200 was reasonable for an attorney licensed since 2009. Id. at *3 (noting that the hourly rate was not opposed); *see also 3DON Partners*, 2009 WL 996016, at *6 (reducing fee to $300 for lawyer practicing 26 years). In a 2011 case awarding fees based on a motion to compel discovery, Magistrate Judge Rosenbaum found that a slightly higher rate of $425 per hour was justified where the attorney, a partner at a prominent firm, had been practicing for twenty-seven years and had extensive experience in the subject matter of the case. *See Great Lakes Transportation Holding, LLC v. Yellow Cab Svc. Corp of Florida, Inc.*, No. 10-80241-CIV, 2011 WL 4118234, at *2 (S.D. Fla. Sept. 15, 2011). Magistrate Judge Rosenbaum also approved an hourly rate of $255 for the associate who had been practicing law in South Florida for five years. *Id.*

According to these cases, the hourly rates Defendants' counsel seeks to recover here are outrageous. While perhaps Cravath's clients are willing to pay those fees, there is nothing in the record that justifies them, and certainly nothing demonstrating that those are the prevailing market rates. Based on the case law, the prevailing market rates are much lower, in some instances three times lower, that what Defendants' counsel charges. Four of the attorneys have been licensed to practice law for less than five years – it is unfathomable that Plaintiff should be forced to pay rates of as much as $613 per hour for the services of those four attorneys.

While Plaintiff has provided the Court with some case law that provides examples of reasonable hourly rates in South Florida, Plaintiff would leave it to the expertise of the Court to determine the prevailing market rate.

C.      **The Number of Hours Counsel Claims is Not Reasonable**

Again, the burden of establishing that the time for which compensation is sought was reasonably expended falls on the fee applicant. *Id.* The applicant must provide specific and detailed evidence that will allow the court accurately to determine the amount of fees to be awarded. *Id.* at 1303 (stating that the "general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.")

In addition, fee applicants are required to exercise "billing judgment" and "a lawyer may not be compensated for hours he would not bill a client of means who was seriously intent on vindicating similar rights." *Id.* at 1301. A court also must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed. *Id.*; *see also ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("Courts are not authorized to be generous with the money of others, and it is as much a duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."); 3Don Partners, 2009 WL 996016, at *9 (reducing costs for a motion to compel where plaintiff billed 15 hours for it while court found it was a basic motion that required only 1 hour, and finding 5 hours excessive on a motion to amend complaint). Redundant hours generally occur where more than one attorney represents a client. *Id.* at 1301-02. "[T]hey may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1302.

Here, Defendants assert that it required four attorneys a total of 38.45 hours to draft, revise and file an extremely elementary motion for sanctions and a reply in support of such. It does not get more basic than the issue at the heart of Defendants' motion: failure to appear for a properly noticed deposition. A cursory look at the relevant Federal Rules of Civil Procedure

articulates the possible sanctions for such an incident, and basic research skills are needed to uncover a case or two to support the argument. Defendants' motion and supporting memorandum consisted of fewer than eight pages, most of which were nothing more than a lengthy recitation of the facts. Similarly, their reply was under six pages with two case citations, and again, mostly factual information. Yet, according to the Declaration attached to the Specification of Costs, these four attorneys spent a total of 38.45 hours drafting the motion and reply.[2]

With respect to the motion, Ms. Ennis billed 14.05 hours for researching and drafting the motion. Both Mr. Jenks and Mr. Diessel, attorneys who are one year apart in their careers as licensed attorneys, and a mere one or two years ahead of Ms. Ennis, spent time reviewing and revising the motion. Mr. Diessel spent 1 hour while Mr. Jenks expended 9 hours. Mr. Stark, as the senior attorney on the case, billed an additional 0.8 hours for reviewing, revising and finalizing the motion. Defendants thus seek reimbursement for a total of 24.85 hours spent on the motion. As for the reply, which, again, was not even 6 pages long, Mr. Diessel required 12.7 hours to draft, revise, and prepare the reply for filing with Mr. Stark logging 0.9 hours for reviewing and revising. This totals 13.6 hours for a simple reply.

The amount of hours expended on these papers is far beyond reasonable. Although it is unclear exactly how much of Ms. Ennis' time was spent conducting research versus drafting the motion, 14.05 hours was completely unnecessary for such a basic motion. Similarly, there is no justification for requiring three additional lawyers to review the motion before filing it. With the exception of a couple of hours needed to draft the motion and reply, the vast majority of these

---

[2] Plaintiff finds it even more astonishing that it took counsel 38.45 hours to complete the motion and reply given the exorbitant hourly rates it charges, which allegedly are based on the outstanding credentials of its attorneys.

hours reflect unnecessary or redundant time for which there is no justification. Defendants have not and cannot meet their burden of proving otherwise.

### D.     Adjustment of the Lodestar

Once the Court determines the lodestar, "the court must next consider the necessity of an adjustment for results obtained. *Norman*, 836 F.2d at 1302. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Id.*

In this case, it is mind-boggling that counsel spent a total of 38.45 hours on these papers, and now seeks to recover $19,358.65 for their work just in preparing the motions. This amount is more than double the amount of fees it actually was seeking to recover in filing the motion - $9,256.56 in costs associated with the deposition of Mr. Sherman. No objective standard permits this kind of recovery. Plaintiff requests that the lodestar, once determined, be adjusted to reflect the lack of complexity involved in recovering these fees, as well as the fact that this was but a very minor part of the litigation as a whole.

### II.     The Expenses Listed are Not Reasonable

In addition to the $19,358.65 Defendant seeks in attorneys' fees, they also seek an additional $9,256.65 in costs. These costs include first class flights for two attorneys from New York to Miami, plus an additional 4 hours of travel time for each of those attorneys, and two hotel rooms. First, Defendants have not provided an explanation as to why two attorneys were required at the deposition, but even assuming two were required, Defendant does have attorneys from the prestigious Hogan Lovells serving as local counsel. There is no explanation as to why one of those attorneys could not serve as the second attorney at the deposition, thus saving the cost of airfare and a hotel room for at least one person. Moreover, the parties took another deposition in this case on May 7, 2012, just one day before the deposition of Mr. Sherman was

9

supposed to go forward, and two attorneys from Cravath attended that deposition as well. Defendants have provided no justification for needing four separate attorneys to travel from New York to Miami to take depositions on consecutive days.

Moreover, although travel to Miami for one attorney may have been necessary, Plaintiff is not required to cover the cost of a first-class ticket. The invoices submitted as exhibits to the Specification of Costs reflect that both Mr. Stark and Mr. Nelson had first-class fares. This is an unnecessary expense that Plaintiff should not be required to pay.

Finally, it is redundant for Plaintiff to have to pay both the cost of airfare for two attorneys as well as travel time for two attorneys, and Defendants have not met their burden of establishing that the cost of travel time is justified. Moreover, presumably Mr. Nelson's 4 hours of travel time was billed at a rate of $474 per hour, and Mr. Stark's was billed at a rate of $1004 per hour. As set forth above, these rates are not reasonable in this market. Accordingly, Defendants costs should be reduced.

10

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiff objects to the Specification of Costs submitted by Defendants, and requests that the Court reduce the hourly rates, the hours expended, and the costs in accordance with its expertise.


Dated:  July 12, 2012

Respectfully submitted,
THE FERRARO LAW FIRM, P.A.
*Attorneys for the Plaintiff*
4000 Ponce de Leon Blvd.
Suite 700
Miami, FL 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222
Email: jpb@ferrafolaw.com

By: _____
JUAN P. BAUTA, II, ESQ.
Florida Bar No. 894060
MELISSA DAMIAN VISCONTI, ESQ.
Florida Bar No. 0068063


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy was served electronically via CM/ECF this 12ᵗʰ day of July 2012.

By: _____
JUAN P. BAUTA, II, ESQ.
Florida Bar No. 894060

11